(January 21, 1914.)

## C. C. CHILDS et al., Respondents, v. N. J. NEITZEL et al., Appellants.

[141 Pac. 77.]

IRRIGATION PROJECT — PROMOTION OF — CONSTRUCTION OF SYSTEM — WATER CONTRACTS—CONSTRUCTION OF—ASSIGNMENT OF—RIGHTS OF PARTIES—COMPLETION OF SYSTEM—MORTGAGEE—ASSIGNEE— RIGHTS OF—CONSTITUTIONAL LAW.

1. Where a company is incorporated for the promotion of an irrigation scheme and to construct an irrigation system, consisting of reservoirs, dams and ditches, and such corporation enters into contracts with persons having land within such project to furnish them water at an agreed price per acre, divided into annual payments with interest on deferred payments, and agrees to complete such system within a certain time and furnish the purchasers of water rights with water, and agrees to turn such system over to such purchasers of water rights after its completion, and thereafter mortgages its interest in such system and water right and also assigns such water right contracts as security for borrowed money, which money is used in the construction of such system, *held*, that the person loaning the money only acquires such rights and interest as the irrigation company has in such project and such water right contracts, and cannot collect the payments that become due after the time has expired for the completion of such irrigation system and the delivery of water until the said system is completed and the water delivered in accordance with the terms of the water right contracts.

2. Under the provisions of said water right contracts, the Murphy Land & Irrigation Company agreed to complete said irrigation system and turn the same over to the purchasers of water rights within a specified time, and the Murphy company was not the trustee or agent of the water right purchasers for the construction of said system.

3. Neitzel, who loaned the money to said Murphy Land & Irrigation Company and took a mortgage and an assignment of said water contracts as security for the payment of the money so loaned, did not become an insurer for the Murphy company to the water right claimants that said system would be completed and the water furnished as provided by said contracts, but acquired no other right than that which the Murphy Irrigation Company had in the collec-

tion of deferred payments provided for by said contracts, and cannot enforce the collection of such payments and apply the same on his mortgage debt until said system has been completed and turned over to the water right purchasers as provided by such contracts.

4. The fact that·the purchasers of such water rights authorized the Murphy company to assign them does not estop them from setting up as a defense against the payment thereof that said system has not been completed as required by said contracts.

5. Mortgagees or assigns of irrigation project corporations can acquire no greater interest in such project or water right contracts connected therewith than such corporations have.

6. Sec. 15 of art. 11 of the state constitution prohibits the legislature from passing any law which would permit the leasing or alienation of any franchise so as to release or relieve such franchise or property held thereunder from any liabilities of the lessor or grantor or lessee or grantee, contracted or incurred in the operation, use or enjoyment of such franchise or any of its privileges.

7. Under the provisions of sec. 2 of art. 15 of the constitution, the right to collect rates or compensation for the use of water is a franchise and cannot be exercised except by authority of and in the manner prescribed by law.

8. Sec. 1 of art. 15 provides that the use of all water now appropriated or that may hereafter be appropriated for sale, rental or distribution is a public use, subject to the regulation and control of the state in the manner prescribed by law.

9. The Murphy Land & Irrigation Company is a public service corporation.

APPEAL from the District Court of the Third Judicial District, in and for Ada County. Hon. Carl A. Davis, Judge.

Action to determine the rights of the several parties under certain water right contracts. Judgment for the intervenors. *Affirmed.*

Davidson & Davidson and Richards & Haga, for Appellants.

The record conclusively shows that the land owners had full knowledge that the only assets of the defendant company consisted of the proceeds to be derived from the payment of the amounts due on water contracts, that such payments were to be made from year to year until December, 1916, and that

such company having no other assets, it was a matter of absolute necessity to use these contracts to borrow money with which to commence construction, and it was necessary and the respondents did consent to the use of such contracts as collateral security for the money so to be borrowed by the defendant company as the owner thereof, and the defendant company and the defendant Neitzel having advanced the money for this purpose on the faith of these contracts as collateral security, the respondents will not be permitted to repudiate such ownership by the defendant company for the purpose intended. (*Hill v. Wand,* 47 Kan. 340, 27 Am. St. 288, 27 Pac. 988; *First Nat. Bank v. Kissare,* 22 Okl. 545, 132 Am. St. 644, 98 Pac. 433.)

This is an equitable action, and he who induces another to his injury to act on a given state of facts will not be permitted to repudiate such facts. (2 Pom. Eq. Jur., sec. 804; *Illinois Trust & Savings Bank v. City of Arkansas,* 76 Fed. 271, 293, 22 C. C. A. 171, 34 L. R. A. 518.)

One who by act intended to influence the conduct of another and thereby lead him into a line of conduct prejudicial to his interests is estopped from a retraction of such act. (*Leland v. Isenbeck,* 1 Ida. 469; *Lane v. Pacific & I. N. R. Co.,* 8 Ida. 230, 67 Pac. 656; *Marysville Mercantile Co. v. Home Fire Ins. Co.,* 21 Ida. 377, 121 Pac. 1026; *Lick v. Munro,* 8 Ida. 510, 69 Pac. 285; *Brigham Young Trust Co. v. Wagener,* 12 Utah, 1, 40 Pac. 764; *Branson v. Wirth,* 17 Wall. (U. S.) 32, 21 L. ed. 566; *Dickerson v. Colgrove,* 100 U. S. 578, 25 L. ed. 618; *The Ottumwa Belle,* 78 Fed. 643.)

Hawley, Puckett & Hawley, for Respondents, file no brief.

Karl Paine and C. E. Winstead, for Intervenors, cite no authorities.

SULLIVAN, J.—This action was brought by C. C. Childs against N. J., R. E. and H. R. Neitzel, W. D. McReynolds and H. A. Toole, directors of the Murphy Land & Irrigation Co., and the Murphy Land & Irrigation Company, for the

purpose of ousting said Neitzels, McReynolds and Toole from the office of directors of said company and to have the offices of president, vice-president, secretary and treasurer declared vacant, and to have a certain mortgage executed by said corporation in favor of H. R. Neitzel declared void and for other relief, and for the appointment of a receiver to take charge of the property of said corporation.

The answer put in issue many of the material allegations of the complaint. This action was based upon the ownership of 2,000 shares of the capital stock of the defendant corporation by said Childs and not upon a contract for a water right.

Upon the trial of the case the lower court granted Childs certain relief prayed for by him and an accounting, but before the findings in the case were filed, Childs waived an accounting, owing to the insolvency of the corporation and the refusal of certain intervenors to assume the major part of the expense of an accounting before a referee. Childs did not appeal from the judgment entered and is only a nominal party in this court, and it appears from the record that the rights of appellant H. R. Neitzel are alone before this court for consideration, so far as appellants are concerned.

A complaint and an amended complaint in intervention were filed in said action, and it is alleged in the amended complaint that the intervenors are holders of certain contracts for water rights under the said Murphy Land & Irrigation Company project, and are the owners and in the possession of more than 3,500 acres of land under said project, which lands intervenors have settled upon and improved at great expense and labor and upon which they and their families are dependent for support. A copy of said water contracts is attached to said complaint in intervention and made a part thereof. The contracts, so far as the covenants and agreements contained therein are concerned, are all the same.

The defendant corporation entered into such agreements with the intervenors and divers other persons, wherein it contracted to construct a certain irrigation system in Owyhee county known as the Murphy project, and to sell to said intervenors and such other persons shares of water appro-

priated and impounded by it, also certain rights in and to the irrigation system itself. Among other things said contracts contain the following stipulation:

"Each of such shares [of water] shall represent a carrying capacity in said canal sufficient to deliver water at the rate of one-eightieth of one cubic foot of water, per acre, per second of time, or in lieu thereof, in event the company shall hereafter elect to distribute the waters flowing and to flow in its canals by a system of rotation, then the company agrees to deliver to second party under such rotation system a quantity of water equivalent thereto in service."

The contract also provides that all dams, reservoirs, headgates, conduits, canals, laterals and other works for the diversion of water shall, at the discretion of the defendant corporation, be and remain its sole property until such time as the said irrigation system shall have been fully completed, and all waters to be diverted and beneficially applied under the said system shall have been sold by it. The corporation also agreed that within one year after the final completion of the whole project and within five years from December 31, 1906, it would turn over the entire project to its water users under its water contracts. The contract also contains the following provision:

"The water to be furnished under this contract may not be available to the purchaser prior to May 15, 1908, and if for any reason the canal shall not be completed so as to enable the company to furnish water through the same by said date, the date of maturity of each and every deferred payment shall be advanced one year, with a waiver of interest upon all such payments for a like period of one year."

The contract also provides that the purchase price of water rights is $35 per acre except in certain cases, and that the purchase price should be paid in ten annual instalments, the first in cash and the second on December 1, 1908, and the remaining eight instalments on December 1st of each succeeding year. Deferred payments were to draw interest at the rate of 6% per annum. The corporation was authorized to collect annually from its water users a maintenance of sixty

cents an acre on the entire tract covered by their contracts whether water was used on the whole of said land or not. The last provision of said contract is as follows: "It is agreed that the stipulations, covenants and agreements in this contract shall be mutually binding upon the parties hereto, their and each of their heirs, executors, administrators, successors and assigns." The contracts had the following indorsement printed thereon: "I hereby consent to the assignment of the within contract," which consent was signed by the intervenors and all other purchasers of water rights.

This contract is the basis of the intervenors' cause of action. The intervenors allege in their amended complaint, among other things, substantially as follows:

That the defendant corporation had never completed said irrigation project and had refused and neglected to do so, and had never delivered and was unable to deliver to the intervenors and the holders of contracts for water rights the amount of water which it had agreed to deliver to them, and that it would be unable to deliver the same until the said irrigation system was fully completed; that the lands included in the contracts were arid in character and required the amount of water bargained for in said contracts in order to grow crops thereon, and that water was not available from any other source for the irrigation of said lands; that the defendant corporation had never turned over said project to its water users; that the defendant had made contracts for the irrigation of about 6,000 acres of land; that there were about $100,000 remaining unpaid on the purchase price of said water rights, all of which would have to be expended in order to complete said system and deliver to the water users the amount of water sold to them; that the defendant threatened to sell other water rights although it had failed to comply with the laws of 1909 (Sess. Laws, p. 335), providing for the regulation and control of the sale of water rights, etc.; that. said contracts for water rights had been assigned by the defendant corporation to the defendant H. R. Neitzel to secure an alleged indebtedness of $150,000 for money advanced by the defendant H. R. Neitzel to the Murphy company for the

purpose of constructing said system, together with interest thereon at the rate of 12% per annum, interest payable semi-annually; that said corporation was unable to pay its debts or meet its current obligations as they accrued and was insolvent in law and in fact; that the intervenors had failed and refused to pay the 1912 instalment of principal and interest due on their said water contracts because of the said default of the defendant corporation in the completion of said system and in the delivery of water and its insolvency, and because of the mortgage given to the appellant Neitzel on the irrigation system and the said assignment of said contracts to the defendant H. R. Neitzel, and the intention of appellants to apply the payments made on the unpaid purchase price of water rights to the payment of said alleged indebtedness to H. R. Neitzel with interest thereon at the rate of 12% per annum; that the intervenors were jointly interested in, and were joint owners with, the other water users of said irrigation system, and that they and the other water users were entitled to have the proceeds received by the defendant corporation from said contracts as principal, interest and maintenance applied to the completion, maintenance and repair of said irrigation system, and to have all other terms and conditions of said contracts kept and performed by the defendant corporation.

The defendant corporation admitted that the form of the contract attached to the complaint in intervention was a copy of those issued to all purchasers of water rights; denied that the system had never been completed or that it was unable to deliver to the water users the amount of water contracted to be delivered to them; denied that it threatened to sell other water rights or that it was insolvent or in default, or that it never offered to turn over said irrigation project to the water users.

Upon the issues thus presented, after a trial the court made findings of fact to the following effect: That the contracts of the form attached to the complaint in intervention had been issued for water for the irrigation of about 6,000 acres of land and that said contracts were in full force and

effect; that the defendant corporation had not completed the
said irrigation project, and that it had never delivered and
was unable to deliver the amount of water sold to the water
users under said contracts, and would not be able to keep
its contracts in that respect until the irrigation system had
been completed; that the lands covered by said contract were
arid in character and required the amount of water for their
irrigation that the appellant corporation had agreed to de-
liver for that purpose, and that water was not available from
any other source for the irrigation of said lands; that on the
1st day of December, 1912, there became due from the inter-
venors, with the exception of two of them who held paid-up
contracts, one instalment of principal and interest; that the
defendant corporation had never turned over the project to
its water users or offered to turn it over to them; that the
interest on the $150,000 loaned to said corporation by the said
H. R. Neitzel at the rate of 12% per annum, if collected,
would have the effect of exhausting the proceeds of principal,
interest and maintenance fund due and unpaid on the said
contracts, and that appellants threatened to collect interest
thereon at said rate and to compel the water users to pay
the sum of $150,000 with interest thereon at said rate before
turning over said system to them; that the said holders of
contracts had paid the defendant corporation the sum of
about $122,000, exclusive of maintenance dues, on the pur-
chase of said water rights; that the defendant corporation
threatened to issue other contracts for water rights although
it had failed to comply with the laws of 1909 providing for
the regulation and control of the sale of water rights, etc.;
that the holders of water contracts had refused to pay the
defendant corporation and the defendant H. R. Neitzel the
instalment of principal and interest on deferred payments
which became payable by the terms of said contracts on the
1st day of December, 1912; that otherwise they had fully
performed their contract in all things to be kept and per-
formed by them; that said intervenors based such refusal
on the insolvency of the defendant corporation and its de-
fault and the threat of appellants to apply all payments on

the purchase price of said contract to the payment of the
alleged indebtedness owing to the defendant Neitzel, including
interest thereon at the rate of 12% per annum; that the de-
fendant corporation was unable to pay its debts or meet its
current obligations as they accrued, as it was insolvent and
without means to maintain the said system or to pay the said
indebtedness to the defendant H. R. Neitzel.

From said findings of fact proper conclusions of law were
made by the court and judgment entered in favor of the
intervenors. Among other conclusions of law were the fol-
lowing: ''That there is now unpaid on the contracts for water
rights issued by the defendant corporation the sum of about
$100,000.00, which money the holders of said contracts are
entitled to have expended in the completion, operation and
repair of said irrigation system so far as may be necessary to
comply with said contracts; that the use of the waters now
held or appropriated by the defendant corporation is a public
use and the right of the defendant corporation to collect rates
or compensation from the holders of said contracts for the use
of water supplied or to be supplied to them ·is a franchise,
and the money remaining unpaid on said contracts for water
rights is a trust fund, of which the defendant corporation or
the defendant H. R. Neitzel, as assignee, is the trustee; that
the holders of said contracts are jointly interested in the said
irrigation system, including the water appropriated by the
defendant corporation to be used in the irrigation of the lands
lying under said project, and are the equitable owners of
the said irrigation system to the extent necessary to supply
water as provided in said contracts, and that the defendant
corporation holds the legal title to said irrigation system,
subject to said claim and said contracts; that the defendant
corporation, or the defendant H. R. Neitzel, as assignee, is
entitled to any surplus remaining unpaid on the purchase
price of said water rights after the said contracts for water
rights have been fully kept and performed by the defendant
corporation; that by reason of the failure and neglect of the
defendant corporation to complete said system and of its
inability to deliver to the holders of said contracts for water

rights the amount of water to which they are entitled for the irrigation of their lands, and because of its insolvency, the holders of said contracts for water rights have failed and refused to make the payments due under their contracts in December, 1911 (1912), and still refuse to make said payments, as they have a right to do; that the probable cost of completing the said irrigation system and making it possible to deliver the required amount of water for the irrigation of the lands owned by the holders of said contracts for water rights is, approximately, $100,000.00, and that there are no assets available for the completion of the said system except the amount remaining unpaid on said contracts."

After entering judgment for the intervenors, a receiver was appointed and was authorized to collect the unpaid part on the purchase price of said water rights with the accrued interest thereon and the maintenance fees, and was directed to manage and operate and complete the construction of said irrigation system, subject, however, to the right of the appellant corporation to co-operate with the receiver in the completion thereof.

The rights of appellant H. R. Neitzel and the rights of the intervenors under said contracts for water are involved in this appeal, and so far as the intervenors are concerned, their claim is based on the breach of the provisions of said contracts by the defendant corporation. The object and purpose of the action on behalf of the intervenors is the enforcement of such contracts through the instrumentality of a receiver and to restrain the appellant H. R. Neitzel from collecting the money due on said water contracts and applying it to the payment of his said mortgage indebtedness, and for general relief.

It is contended by counsel for appellant that the facts as found by the court clearly show that the appellant corporation was organized solely to provide a system of irrigation for certain lands, the cost of which was to be paid by the owners of such lands, and that to provide funds for the construction of such system $150,000 was borrowed by said corporation, and to secure the payment of the same a mortgage was given

by said corporation covering its interest in such system, and also by an assignment of said water contracts. The mortgage was given to said H. R. Neitzel and the said water contracts were assigned to him. The sum so borrowed was used in the construction, maintenance and operation of said system but was insufficient to complete the same. The court found that there had been paid on said water contracts about $122,000 to the appellant corporation. Upon that state of facts, counsel for appellant propounds the following question: In the light of these facts, the question presented for determination is, Can such land owners apply the balance due on such written obligations to the completion, operation and maintenance and repair of such system instead of applying the same to the payment of the money so borrowed? Counsel contends that the defendant company was the mere instrument or legal means for providing the lands with water, the cost thereof to be paid by such land owners or purchasers of water under said contracts.

We cannot agree with counsel in that contention. The Murphy company agreed to complete said irrigation system with its dams, reservoirs and canals and turn the same over to the purchasers of water rights within a specified time, the price per acre for such water rights being stipulated in most of the contracts at $35 per acre. The Murphy company no doubt contemplated making a considerable profit for itself in the construction of said system. It was not an eleemosynary corporation or the trustee or agent of the water right purchaser for the construction of said irrigation system, but was a corporation organized for the purpose of making a profit to its stockholders from the construction of said system. If any profits had arisen to the company from the construction of said system, the purchasers of said water rights could not, under said contracts, share in them with the Murphy company. The Murphy company had employed engineers and experts to examine said irrigation project as to its feasibility, the quantity of water that could be obtained for the irrigation of said land and the cost of the construction of said system to make the water available to the land to be irrigated, and

after that was done, an estimate was made of the amount to be charged for each acre water right that would be necessary and sufficient to construct said system and pay a good profit to the Murphy company. Under said water contracts it was not expected, contemplated or necessary for the purchasers of water rights to employ engineers and other experts to make a proper estimate of the amount of water obtainable and the cost of the construction of the system, and to ascertain whether the company could place the water at feasible points near the land to be irrigated. That had been done by the Murphy company, and it sold water rights upon the representations that it had water sufficient to furnish each purchaser with the amount called for in his water contract, and also was able to construct said system and complete it. Hence the purchasers of water rights under such system had a legal right to depend upon the estimates made by the irrigation company and upon their contracts with it to the effect that the company would finish and complete the system and furnish the water according to the terms of the contract. They did not purchase under the rule *caveat emptor.*

Said contracts show their exact terms on their face and include mutual covenants, and since H. R. Neitzel received said contracts by assignment, he had notice of all the covenants contained therein. Those contracts were made by the purchasers of water rights with the Murphy company, and that company could not have enforced the collection of the deferred payments and interest thereon without complying with the terms thereof as to the construction of said system and the delivery of water, and neither the mortgagee nor the assignee could acquire any greater rights in that regard than the Murphy company itself had under said water contracts. H. R. Neitzel, by loaning said money to the Murphy company and taking as security for the payment of the same a mortgage on said company's interest in said system and water rights and an assignment of said water right contracts, did not become an insurer for the Murphy company to the water right claimants that said system would be completed and the water furnished, but he stands in the shoes of the Murphy

company so far as the collection of the deferred payments is concerned and cannot enforce their collection until said system is completed and the water furnished in accordance with the terms of said water right contracts.

The purchasers of water rights depended upon their contracts as to what their water rights and said system would cost them, and had they considered that their water rights would cost them more than $35 per acre, they might not have entered into said contracts. It would have been an easy matter to have worded said contracts so as to have required such purchasers to pay the entire cost of said system had that been the intention of the parties. That was clearly not the intention, as the agreement was to pay $35 per acre for the right, and no more. The Murphy company had agreed to turn over to the purchasers of said water rights certain amounts of water with a canal system completed in such a manner as to make it feasible to irrigate said lands, and until that was done neither the Murphy company nor its assigns could enforce the payment of the amounts that were to become due upon said contracts.

When H. R. Neitzel loaned the said Murphy company $150,000 he knew that only a part of the money due on the contracts was payable prior to the time the Murphy company had agreed to complete the system and turn it over to said purchasers. He certainly knew that if his assignor, the Murphy company, made default and failed to complete said system, it would be necessary for him to complete the project or lose his security, at least to the extent of the cost of completing the system.

The fact that the purchasers of said water rights authorized the Murphy company to assign said contracts does not estop them from setting up as a defense to the payment thereof the fact that the Murphy company has not complied with its contract in the construction and completion of said canal system. The purchasers of water rights were not the stockholders in the appellant corporation; they had no voice whatever in directing its affairs, and, as before stated, they could not share in the profits of the enterprise had there been any

profits realized, nor can they be required to stand the loss incurred in case there is a loss on the part of the Murphy company in completing said system in accordance with the terms of the contract. The purchasers of water rights ought not to be penalized because they were so unfortunate as to purchase a water right from an irresponsible and unreliable company. The obligation rests upon the person who loans money to such a corporation to investigate the financial condition of the corporation and its ability to perform its covenants with the purchasers of water rights, and if he does so investigate, he has full notice that the deferred payments for such water rights cannot be collected until the system is completed and the water delivered. The purchasers of the water rights, as shown by the record, have neglected no duty they owed to the appellant H. R. Neitzel; they have been guilty of no fraud, have made no false representations, and, so far as the record shows, have committed no wrong, legal or equitable.

It is a part of the irrigation history of the state that under the representations made by many such irrigation companies, persons have sold their holdings elsewhere and been induced to settle upon lands under such projects with the understanding and agreement that they should receive water at a certain price per acre, and were thus induced to take up land and settle upon it under such projects. If a corporation thus inducing people to purchase and settle upon such lands is permitted to violate its contract and increase the price per acre for a water right without the purchasers' consent, it would be most unjust to the settler.

The last provision of said water contract is to the effect that the covenants and agreements in said contract shall be mutually binding upon the parties thereto, their and each of their heirs, executors, administrators, successors and assigns.

Counsel for appellants contend that in lending the money to the Murphy company, Neitzel relied upon said water contracts as security, and for that reason the water users are estopped to deprive him of the benefit of such security. From the admissions in the answer of appellants, it appears

that Neitzel's chief reliance for the payment of said money was not entirely on the security which he received but in his faith in his judgment as to what it would cost to complete the project and in his ability to carry out the contracts.

It is alleged in appellants' answer as follows: "That on the 15th day of January, 1910, the defendant H. R. Neitzel, acting for himself entered into a contract with the plaintiff C. C. Childs and the defendant R. E. Neitzel, by the terms of which said defendant H. R. Neitzel agreed to finance to completion the project of the Murphy Land & Irrigation Company in Owyhee County," etc. Neitzel's object in entering into that contract no doubt was to protect and preserve his security, but since the system is going to cost much more than was anticipated to complete it, he is seeking to avoid the natural consequences of his own mistaken judgment. It is not claimed that the water users made any inducements or representations to him as to the cost of the completion of said system. It was the Murphy company which promoted this scheme; it prepared the printed form of contracts for the water users to sign and made and held out all the inducements that were offered by anyone connected with the enterprise. The Murphy company was the one that had carefully gone into all of the facts relative to the cost of said system and the amount of water that could be conserved thereby. It represented to the purchasers that it had the ability to deliver to them a completed system so that each of the purchasers of water rights should have water for his land delivered within a short distance thereof at a point feasible for him to take it upon his land. Under such contracts the water users were empowered to enforce them against the company or its assignee, and the company upon complying with the terms of the contract required to be performed by it could enforce the payment of the purchase price from the original purchaser of a water right or his assign.

Construction companies of this kind will not be permitted to do indirectly what they are prohibited from doing directly. They will not be permitted to make contracts with third parties in regard to the construction or completion of an irriga-

tion system whereby the land owners or purchasers of water rights can be deprived of the rights acquired under their water right contracts. For instance, if a company, such as the Murphy company, fails to complete its system and furnish the water as provided in the water right contracts, or if such company should sublet the construction of its system and fail and neglect to pay such subcontractor, the subcontractor could not acquire greater rights as against the water right purchasers than the irrigation company itself had under its contract with the purchasers of water rights, and could not deprive the purchasers of water rights under such system of their rights or acquire a right by foreclosure of a lien or mortgage for such construction work as would deprive the water right purchasers of their rights under their contracts.

Sec. 15 of art. 11 of the constitution provides that the legislature shall not pass any law permitting the leasing or alienation of any franchise so as to release or relieve the franchise or property held thereunder from any of the liabilities of the lessor or grantor, or lessee or grantee, contracted or incurred in the operation, use, or enjoyment of such franchise, or any of its privileges.

Sec. 2 of art. 15 is as follows: "The right to collect rates or compensation for the use of water supplied to any county, city, or town, or water district, or the inhabitants thereof, is a franchise, and cannot be exercised except by authority of and in the manner prescribed by law."

Sec. 1 of art. 15 provides that the use of all waters now appropriated or that may hereafter be appropriated for sale, rental or distribution, is declared to be a public use subject to the regulation and control of the state in the manner prescribed by law.

The Murphy company was a public service or a *quasi* public corporation, and the use it was making of its irrigation system and of the waters appropriated by it was a public use, and the right it was exercising in selling water shares and rights in the irrigation system and issuing contracts therefor and collecting rates and compensation was a franchise, and such franchise could not be granted to it in any manner so as to

relieve it of its duty to the public or release its franchise and the property acquired thereunder of any liability for a failure to complete its system. In loaning money to such a corporation, the one loaning must rely primarily on the borrower to carry out the contracts with the water right purchasers. The mere consent of the water right users to the assignment of said contracts was not a waiver of their right to have the system completed; but the assignment was given subject to the obligation of the Murphy company, or its assigns, to carry out and complete said irrigation system and deliver the water.

It is contended by counsel for appellants that the court erred in decreeing that the amounts remaining due and unpaid on said water contracts, or so much thereof as may be necessary, be expended in the completion, operation, maintenance and repair of said irrigation system by the receiver, and that this decree places no limitation as to the time or conditions in which this money can be so used in maintaining, operating and repairing such system, and that said water contracts provide that such land owners must pay sixty cents an acre annually as an operating and maintenance fee. Under the terms of said contract, the Murphy company was to maintain and operate said canal until the system was completed, and turned over to the water users. Now, this matter has been placed in the hands of a receiver whereby the Murphy company is permitted to co-operate with the receiver in the work of completing and maintaining said system, and the receiver is authorized to collect the maintenance fee of sixty cents per acre as well as the deferred payments, which moneys are to be applied in the maintenance and completion of said system. Counsel intimates that there is no time limit to which such moneys may be used for the operation and maintenance of said system. Counsel is there mistaken, for the Murphy company or its assigns may complete the system as quickly as possible, and when completed may turn it over to the water users and thus avoid any further expenses in connection with it. There is nothing in this contention. The receiver has full authority to proceed and expend the deferred payments on said contracts in the completion of said canal.

He has authority also to collect sixty cents an acre maintenance fee, which must be applied as provided by said contracts.

The judgment must therefore be affirmed, and it is so ordered, with costs of this appeal in favor of the respondent intervenors.

Ailshie, C. J., and Budge, District Judge, concur.

(May 28, 1914.)

ON REHEARING.

[141 Pac. 83.]

DEFERRED PAYMENTS—PAYMENT OF TO RECEIVER.

1. *Held,* under the water right contracts involved in this case, the deferred payments for such water rights do not become due until water is made available for the reclamation and irrigation of the lands as provided by the terms of such contract; and when the water is made so available, the deferred payments become a lien on the land and the water right.

2. *Held,* that where a water contract holder pays any part or the whole of the deferred payments to the receiver, under the order of the court, he is entitled to a credit on such contract for the amount paid.

REHEARING on appeal from the District Court of the Third Judicial District, in and for Ada County. Hon. Carl A. Davis, Judge.

Action to determine the rights of the several parties under certain water right contracts. Judgment for the intervenors. *Affirmed.*

Davidson & Davison and Richards & Haga, for Appellants.

The appointment of a receiver does not have the effect of changing contractual relations between parties. (High on Receivers, secs. 201, 204, 318.)

The specific performance of such a contract would require constant supervision of the court for years unless the receiver should succeed in immediately enforcing payment from all settlers, and unless the funds so collected should prove sufficient to complete the project. (6 Pomeroy, Eq. Jur., sec. 760; Fry, Specific Performance, sec. 48; *Ross v. Union Pac. Ry. Co.*, Fed. Cas. No. 12,080, Woolw. 26; *Texas & Pac. Ry. Co. v. City of Marshall*, 136 U. S. 393, 10 Sup. Ct. 846, 34 L. ed. 385; *Beck v. Allison*, 56 N. Y. 366, 15 Am. Rep. 430; *Alabama Western R. Co. v. State ex rel. Garber*, 155 Ala. 491, 46 So. 468, 16 Ann. Cas. 485, 19 L. R. A., N. S., 1173; *Farmers' Loan & Trust Co. v. Burbank Power & Water Co.* (D. C.), 196 Fed. 539.)

Karl Paine and C. E. Winstead, for Intervenors, cite no authorities on rehearing.

Ira E. Barber, as *Amicus Curiae.*

The rule that specific performance will not be decreed in building and construction contracts on account of the inconvenience of enforcing such decree is subject to important exceptions. (*Wilson v. Furness Ry. Co.*, L. R. 9 Eq. 28, 38, 39 L. J. Ch. 19, 21 L. T., N. S., 416, 553; *Gregory v. Ingwersen*, 32 N. J. Eq. 199; *Stuyvesant v. Mayor etc. of New York*, 11 Paige Ch. (N. Y.) 414; *Grubb v. Starkey*, 90 Va. 831, 20 S. E. 784; *Birchett v. Bolling*, 5 Munf. (Va.) 442; *Wolverhampton v. Emmons*, 1 K. B. (1901) 515; *Storer v. Great Western R. Co.*, 12 L. J. Ch. 65; 36 Cyc. 583, and cases cited, note 54.)

Equity will not refuse specific performance because a contract has several years to run. (*Prospect Park & Coney Island R. Co. v. Coney Island & Brooklyn R. Co.*, 144 N. Y. 152, 39 N. E. 17, 26 L. R. A. 610.)

SULLIVAN, J.—A rehearing was granted in this case upon the petition of appellant Neitzel, and additional briefs and oral arguments were presented on such rehearing. Ira E.

Barber, Esq., and N. M. Ruick, Esq., appeared as friends of the court and filed briefs.

*In limine,* C. C. Childs brought this action to oust the board of directors of the Murphy Land & Irrigation Co. and to have a certain mortgage, executed by said corporation to the appellant, H. R. Neitzel, canceled and held for naught, and for an accounting and for the appointment of a receiver to take charge of the property of said defendant corporation, for the purpose of conserving the same for the benefit of said corporation and its creditors and all other persons having any interest therein, and that such receiver have full management of the business of such company under the order and direction of the court.

Thereafter many of those holding contracts for water from said corporation intervened in said action and took full charge of said case. Said intervenors filed their complaint in intervention on their own behalf and on the behalf of all others holding water contracts issued by said corporation. The intervenors named as plaintiffs represented about 3,500 acres of land within said project out of a total of about 6,000 acres. Extracts from the said water contract are set forth in the original opinion in this case. Under the terms of said contract, said corporation was to complete said system and turn it over to the water contract holders on or before December 31, 1911. Said system was partially completed and some of the purchasers of water rights received water therefrom. The corporation became insolvent and was unable to complete the system.

The record shows that H. R. Neitzel was the controlling spirit of said corporation, as early, at least, as 1910. He was president of the corporation; his nephew was secretary and he and his wife and nephew were members of the board of directors of said corporation. The appellant Neitzel had full knowledge of the financial condition of said corporation, of its insolvency, and of its inability to complete said irrigation system in accordance with the terms of said water contract. It was conceded on the argument that the correct rule was laid down by this court in its original opinion

in this case, to the effect that the person loaning money to such a corporation, to be used in constructing its irrigation system, acquires only such rights and interests as the irrigation company has in such project and such water right contracts, and cannot collect payments on such contracts until the water has been made permanently available to the user under the terms of said contracts, not only for one season, but for all seasons. In other words, the corporation is required to make provision for a sufficient permanent supply of water and a reasonably permanent system of reservoirs, dams and ditches of sufficient capacity to hold and convey such water to the users as per the terms of said water contracts, before the water user is required to make the deferred annual payments provided for in said contracts.

The main contention of counsel for appellant Neitzel on oral argument was in substance that the receiver could not proceed and complete the system under the direction of the court, first, because there were no plans and specifications by which the receiver could be guided in the completion of said system; and, second, that the receiver had no funds with which to complete the system and had no authority under the water contracts to collect the annual payments agreed to be paid until the water had been delivered to the owners.

There is nothing in the first contention of counsel, for the reason that the record shows the plans and specifications for the construction of said system is a part of the public records and files of the state in the state engineer's office, which plans and specifications have been approved by the state engineer. It is alleged in the fifth paragraph of the complaint that the plans and specifications for the reservoirs, ditches, dams, etc., of said Murphy project are on file with the state engineer of the state of Idaho, and that allegation is admitted by the answer of the defendants.

As to the second contention, this court in its former opinion did not intend to hold that the receiver could proceed and collect the annual instalments agreed to be paid by the owners of such water contracts until such instalments became

due. The court did not intend to make a new contract in regard to the payment of said instalments, but since the intervenors named in the complaint in intervention owning over half of the land within said project appeared for themselves and on behalf of all others having similar contracts and asked for the appointment of a receiver to take charge of said system and complete it and turn it over to the water users, as per the terms of said water contracts, this court took it for granted that they were all anxious to have the system completed, and that if a receiver could be appointed to take charge of said matter and could find a contractor who would be willing to go on and complete said system for the balance, or a part of the balance, owing and to become due from the water right contract holders when water was made permanently available for the irrigation of their lands, they would pay said instalments.

The trial court, as a court of equity, had the power to appoint such receiver and under its supervision complete said system. The trial court, as well as this court, recognizes the rights of appellant Neitzel and the irrigation company, and supposed they were both interested in the completion of said system in accordance with the intention of the parties, and if anything could be saved to the mortgagee or the irrigation company after the completion of said system, that would be done, and that the trial court, through its receiver, would protect the interests of all concerned under all of the facts and circumstances of the case. It was not the intention of the trial court to authorize the receiver to collect the future instalments on said water contracts before such instalments matured. But it was the intention to empower him to enforce said contracts according to their terms and conditions.

The fifth conclusion of law by the trial court is as follows: "That the receiver should be appointed by the court to take possession of the irrigation system of the defendant corporation and to manage, operate, maintain, repair and complete said irrigation system, according to the requirements of the contracts for water rights, and that such receiver should be authorized to collect from the holders of said water

contracts the amounts due and owing thereon and to become due and owing thereon, from time to time, and all maintenance fees to be paid by said water contract holders, as in said water contracts provided.''

The conclusion and judgment of the trial court was founded upon the fact that the irrigation company is insolvent and unable to complete the system. The judgment of the district court and the decision of this court authorize the receiver to proceed and collect the instalments as they become due from the water users who have already received water and are receiving water for the irrigation of their lands in the quantity required by the terms of said contract, and do not relieve the water users from their obligations to pay the purchase price for their water rights when water is available for them. The decision is intended to protect all parties interested in their rights, and to have said system completed, if possible, in accordance with the terms of said contracts, and it is placed in the hands of a receiver on account of the inability of the irrigation company to complete it and the unwillingness of appellant Neitzel to do so. The water right purchasers are entitled to have said system completed, if that can be done, with the funds that would become due from the water users upon making the water permanently available for the reclamation and irrigation of their lands as provided by the terms of said contracts.

We did not mean to hold in the original opinion that the annual instalments provided for by said water contracts did not become due and payable until the entire system was completed; but when the system was so far completed as to make water permanently available for any particular user for all seasons, the instalments agreed to be paid by the user would become due and payable in accordance with the terms of the contract. Then he has no reason to complain of lack of water for other land owners because he has water available for the irrigation of his land. However, if water has not been made available to others holding water contracts, in case the construction company is insolvent, such water right owners might be injured by the noncompletion

of the system, and upon proper application a court of equity might require the payments due and to become due from the water users to whom water had been made available to be paid to a receiver to be used in the completion of such system.

While the Murphy project is not a Carey Act project, the contracts entered into with the purchasers of water rights are similar in many respects to those entered into by the purchasers of water rights under the Carey Act.

The amendment by Congress to the Carey Act, approved June 11, 1896 (29 Stats. at L., p. 435), clearly authorizes a lien to be created by the state upon such lands as are granted to the state under said act, and when created shall be valid on and against the separate legal subdivisions of the land reclaimed for the actual cost and necessary expense of reclamation, and a reasonable interest thereon from the date of reclamation until disposed of to the actual settler, and provides as follows: "And when an ample supply of water is actually furnished in a substantial ditch or canal, or by artesian wells or reservoirs, to reclaim a particular tract or tracts of such lands, then patents shall issue for the same to such state, without regard to settlement or cultivation." That provision for a lien contemplates an ample supply of water shall have been actually furnished in a substantial ditch or canal or by artesian wells or reservoirs to reclaim such land in order to create a lien. · That is making water permanently available to the user. Prior to that amendment by Congress to the Carey Act, the legislature of Idaho had enacted a law authorizing and granting a lien on lands and water rights for the cost of reclamation. (See Laws 1895, p. 227; sec. 1629, Rev. Codes.) Said section provides, among other things, that "Any person, company or association, furnishing water for any tract of land, shall have a first and prior lien on said water right and land upon which said water is used, for all deferred payments for said water right; said lien to be in all respects prior to any and all other liens created or attempted to be created by the owner or possessor of said land," etc. The law clearly contemplates that after water has been made permanently avail-

able for the irrigation of the land of a water right owner; all deferred payments for such water right shall become a lien on the land and the water right, and such deferred payments may be collected by the owner of such water right contracts in case a court of equity has not directed that such payments must be applied to the completion of the system, and in such a case the court may direct all such payments to be made to a receiver appointed by the court to collect the same and complete the system. In case the water contract holders pay the balance due on such contracts, or any part thereof, to the receiver, under the order of the trial court, they would be entitled to a credit on their contracts for the amount paid.

The water contracts in the case at bar make the deferred payments a lien upon the water rights and land; but such liens do not attach until the water has been made permanently available for the reclamation of the land.

It is suggested by counsel for appellant that should the receiver in this case undertake to ·enforce the collections provided for by said water right contracts, he would not be able to procure the evidence of the amount due or to get possession of the original contract on which to sue, in case suit for the collection thereof was necessary. It is sufficient to say that appellant Neitzel is a party to this suit and the court has jurisdiction of him, and it further appears that said contracts were assigned to him, and the trial court no doubt could find a means to compel him to turn over said contracts to a receiver, if that were needed. And no doubt said contracts are all of record in the proper county recorder's office, and it would not be difficult to establish the amount remaining unpaid thereon.

It is also suggested by counsel for appellant that the trial court has prescribed no time limit in which the receiver shall complete the system, or that there is no assurance that the system can be completed with the money remaining unpaid on the contracts for the water rights. It is sufficient to say that a court of equity has full power and control of this matter and will see to it that if the system can

be completed, that it will be done as soon as practicable. The court will certainly see to it, upon proper application, that the receiver acts as promptly in this matter as is consistent with the best interests of all concerned, and will not permit him to fritter away his time and the money of the settlers in the completion of said system. The record shows that the system can be completed for about one hundred thousand dollars, the amount remaining unpaid on the contracts for water rights. When the instalments become due on such contracts, if the parties owing the same refuse to pay, the trial court may authorize the receiver to bring proper actions for the collection of the same.

Counsel for appellant contend that the court erred in directing the specific performance of the contract for the completion of said system. This objection is predicated upon the general rule that contracts for erecting buildings or doing construction work will not be enforced specifically by a court of equity. The reason for that general rule is that the enforcement of such contracts would cause the courts great inconvenience, but there is no question but that courts of equity have jurisdiction to require the specific performance of such contracts if they conclude it is necessary to do so in order to protect the rights of the parties. If a court of equity is without authority to specifically enforce the contracts in question, the water users would have no remedy whatever by which they could protect their rights. There would exist a wrong without a remedy, and that is contrary to the well-recognized maxim that equity will not suffer wrong to be without a remedy. It would be a grievous wrong to the owners of contracts for water rights to be compelled to pay for such rights and have no remedy whatever to compel the contracting party to furnish them water.

There is nothing in the record to show that the water contracts, which by their terms require the completion of said system, are not susceptible of specific performance. The record before this court shows that it will cost about one hundred thousand dollars to complete the system, but there is nothing in the record to show that the court, through

its receiver, may not complete said system in accordance with the terms of the contract and thus protect the rights of all the parties. In case a contract can be let for the completion of said system in accordance with the plans and specifications for less than the amount to become due on said contracts, there certainly would be no difficulty in having the system completed; but in case the amount to become due on such contracts is not quite sufficient to complete the system, the court through its receiver may complete the system so far as it may be done with such funds, and the settlers may then be able to devise ways and means for the entire completion of the system. But there certainly will be no serious difficulty in having said system completed so far as the instalments to become due on said water contracts will pay for the same, and if the system cannot be completed so as to give some of the contract holders water, then such holders cannot be required to pay for something they do not get. The district court, as a court of equity, has full power and authority in said matter to proceed as indicated by its findings and judgment already entered in this case and protect the rights of all the parties as far as can be done under the facts of this case.

It must be remembered that this action was prosecuted by the intervenors on their own behalf and on behalf of all holders of water contracts. These holders not named in the complaint in intervention may become parties and be permitted to share in the fruits of this action upon complying with such reasonable conditions as the lower court may impose, and they alone can object to the right of the receiver to collect from them. They, of course, have a right to their day in court, and if they do not come in or are not brought in, and required to comply with the orders of the court, the court will not require the receiver to complete the system so as to furnish them water, as originally contemplated.

We therefore adhere to the rules of law laid down in the original opinion as amplified in this opinion on rehearing. The judgment of the trial court is affirmed and the cause re-

manded for further proceedings in accordance with the views expressed in said opinions of this court.  Costs are awarded to the respondent intervenors.

Ailshie, C. J., and Walters, District Judge, concur.