## TWIN FALLS SALMON RIVER LAND & WATER CO. v. DAVIS et al.

(Circuit Court of Appeals, Ninth Circuit. September 7, 1920.)

No. 3476.

1. **Waters and water courses ☞222—Carey Act gives no lien on lands for which there is not sufficient water.**

Under Act June 11, 1896, c. 420, modifying the original Carey Act Aug. 18, 1894, c. 301, § 4 (Comp. St. § 4685), and authorizing the state to create a lien against the land reclaimed for the actual cost and expenses of reclamation, and Rev. Codes Idaho, § 1629, giving a company furnishing water a first lien on the land, a company which constructed under contract with the state an irrigation system to water lands withdrawn under the Carey Act acquired a lien on such lands only to the extent that the available water supply was sufficient to reclaim them.

2. **Waters and water courses ☞222—Sufficiency of water for land under Carey Act finally decided by General Land Office.**

The determination of the quantity of land which may be irrigated from the water supplied under a Carey Act project is a question of fact, on which the determination of the General Land Office is conclusive on the courts, so that the relinquishment of reserved land in excess of the amount which can be irrigated cannot be restrained in a suit by the corporation constructing the project.

3. **Waters and water courses ☞222—Approval of project does not estop state from relinquishing lands in excess of quantity supplied with water.**

The approval of the Carey Act project by the state engineer, under Rev. Codes Idaho, § 1618, which requires the engineer to determine whether there is sufficient water, does not estop the state from thereafter relinquishing land in excess of that for which water was supplied, since the construction company did not act on the engineer's representation, but determined the supply of water for themselves in their application, and therefore the action of the state land board and the Secretary of the Interior in approving the withdrawal of the quantity of land stated did not give the construction company a lien on the total quantity.

Appeal from the District Court of the United States for the Southern Division of the District of Idaho.

Suit by the Twin Falls Salmon River Land & Water Company against D. W. Davis and others. From a decree dismissing the complaint (260 Fed. 270), plaintiff appeals. Affirmed.

This is an appeal from a decree dismissing the complaint. Plaintiff, appellant here, a corporation formed under the Carey Act, and its assignors, under contract with the state of Idaho, constructed what is known as the Salmon River Carey Act project. The statutes of the United States which have to do with Carey Act projects are 28 Stat. 372, 422, c. 301, § 4 (Comp. St. § 4685) ; 29 Stat. 414, 434 ; 31 Stat. 1133, 1188, c. 853, § 3 (Comp. St. § 4687) ; Resolution May 25, 1908, No. 28, 35 Stat. 577 (Comp. St. § 4688) ;. 35 Stat. 347 ; and the sections of the Revised Codes of Idaho which relate to the projects are 149, 150, 1558, 1613, up to and inclusive of section 1634. Features of the contract involved here and the construction of the irrigating system are more fully explained in Twin Falls Salmon River Land & Water Co. et al. v. Caldwell et al., 242 Fed. 177, 155 C. C. A. 17, and in Twin Falls Salmon River Land & Water Co. et al. v. Caldwell et al., 30 Idaho, 41, 190 Pac. 220. The defendants represent the state of Idaho in public matters pertaining to Carey Act projects. The commissioner of reclamation was substituted for the state land board by virtue of section 44, chapter 8, page 67 of the 1919 Session Laws of Idaho.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The complaint with much detail alleges that in 1911 the plaintiff substantially completed the project and fulfilled its contract of 1908, but that the defendants have unreasonably neglected to approve the work or to accept the system, and will not act in the premises, but have harassed plaintiff and delayed and are encouraging settlers to refuse payments under their contracts for water rights. The original contract contemplated irrigation of approximately 150,000 acres. Before the contract was entered into the state board caused an examination to be made by the state engineer of available water supply for the project. The state engineer reported a water supply that was adequate, and the land board approved this report. Plaintiff alleged that it relied upon the report of the state engineer when it made the construction contract, but that after bond had been given for the construction of the works, and work had been commenced, the board concluded that the water supply was much below the reported quantity, and plaintiff was directed to limit the sale of water rights in the system to about 75,000 acres. Plaintiff alleged that this operated to deprive plaintiff of the right to sell water for upwards of 75,000 acres, without provision being made for any increase in the price of water for the smaller acreage, or for reimbursing plaintiff for loss on account of the reduction of the project. It is also alleged that the project was further reduced until about the time of the trial, when there were outstanding water contracts with settlers for some 60,283 acres, and that the price as originally fixed for the entire acreage was $40 per acre, payable in installments extending over a period of 11 years, although appellant had expended in construction more than $3,500,000, relying upon the report of the state engineer and the approval thereof by the state board, and the provisions of the contract with the state board that the irrigable acreage was 150,000 acres. By supplemental complaint, filed in 1918, plaintiff alleges that defendants intend to apply for patent for about 35,000 acres of land included within the project, and to relinquish approximately 20,000 acres for which plaintiff has sold water rights, and upon which plaintiff claims liens to secure the payment of the purchase price of the lands. The prayer is for injunction against such relinquishment, or any act that could impair plaintiff's lien.

The answer admits the proposed relinquishment of about 25,000 acres of segregated lands, denies that water rights have been sold for all of the acreage proposed to be relinquished, denies any lien in favor of plaintiff, and alleges that the Commissioner of the General Land Office of the United States, in company with the state land board, examined the project for the purpose of arriving at a determination as to what action should be taken with reference to it, and that in October, 1917, the Commissioner submitted a communication to the land board, stating in effect that the then present available water supply was sufficient to irrigate 34,600 acres, which could be slightly increased by certain modifications, and advising the board to contract the project to approximately 35,000 acres. Defendants deny that the lands were all filed upon or paid for, deny reclamation, and plead that any action taken by defendants was in pursuance of the direction of the Commissioner of the General Land Office, that determination had not been made as to what particular lands should be relinquished, and that defendants were having an examination made and a report as to what lands should be retained, and for which water was available, and that before the adoption of any report the settlers, under the system, would have an opportunity to appear and show cause why the plaintiff's proposed plan should not be adopted, and that March 12, 1918, was fixed as the date for hearing.

Evidence, principally records, was offered by plaintiff. Defendants introduced no evidence, except the minutes of the meeting of the board of land commissioners held October 18, 1917, whereat a communication from the Commissioner of the General Land Office was read to the board and adopted, and a resolution was adopted by the board in conformity with the communication. The substance of the resolution was that the total irrigable acres in the project should not exceed 35,000 irrigable acres, and the state board should not apply to the United States government for patent to lands within

the project, which added to any lands already patented, or state lands there-
tofore sold, or desert entries remaining within the project, which would make
a total acreage receiving water from the system, and within the project, of
over 35,000 acres. The resolution further provided that the state board
should proceed and adjust the Twin Falls project and the Oakley project in
accord with the recommendations of the Commissioner of the General Land
Office and the resolution previously passed by the board.

Richards & Haga, of Boise, Idaho, for appellant.

Roy L. Black, Atty. Gen., of Idaho, and Dean Driscoll, First Asst.
Atty. Gen., of Idaho, for appellees.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

HUNT, Circuit Judge (after stating the facts as above). The ap-
pellant's argument has led it to state the following conclusions: (1)
That the approval of the water supply by the state engineer and the
state land board before the project was undertaken is binding upon the
state, and that the defendants, appellees, cannot relinquish to the
United States the lands in question after plaintiff has constructed
the works for the reclamation in accordance with its contract with
the state. (2) That the approval of the water supply and the feasibil-
ity of the project by the Secretary of the Interior at the time the lands
were segregated for reclamation under the Carey Act cannot be af-
fected or modified, after the works have been constructed and the
lands entered and are occupied by settlers who have made improve-
ments thereon. (3) That the appellant, having constructed the works
as required by the contract, has a lien upon the lands, and that such
lien is vested, not to be disturbed by the authorities of the state or
of the United States.

Examination of chapter 301 (28 Stat. 422, § 4), approved August
18, 1894, will aid in a better comprehension of the underlying purposes
of the Carey Act. It was therein provided:

"That to aid the public land states in the reclamation of the desert lands
therein, and the settlement, cultivation and sale thereof in small tracts to actual
settlers, the Secretary of the Interior, with the approval of the President, be
and hereby is authorized and empowered, upon proper application of the state,
to contract and agree * * * with each of the states in which there may
be situated desert lands, * * * binding the United States to donate, grant
and patent to the state, free of cost for survey or price, such desert lands, not
exceeding 1,000,000 acres of land in each state, as the state may cause to be
irrigated, reclaimed [and] occupied, and not less than twenty acres of each
one hundred and sixty acre tract cultivated by actual settlers, within ten
years next after the passage of this act, as thoroughly as is required of
citizens who may enter under the said desert land law."

Further provision is that before any application is allowed, or
agreement is executed, or segregation is made, the state must file a
map of the lands proposed to be irrigated, showing the plan of the
contemplated irrigation, the plan to be sufficient to "thoroughly ir-
rigate and reclaim said land and prepare it to raise ordinary agri-
cultural crops." The Secretary of the Interior, in the event of his
approval, is directed to reserve the land from the date of filing the
plans, and the state is authorized by the act of Congress to make con-
tracts and cause the lands "to be reclaimed, and to induce their set-

tlement and cultivation in accordance with the subject of the provision of this section," but the state is not authorized to lease any of the lands, or to use or dispose of them in any manner, except to secure their "reclamation, cultivation and settlement." The act provides also that, as fast as the state shall furnish satisfactory proof that any of the lands are irrigated, reclaimed, and occupied by actual settlers, patents shall issue to the state for such lands. By Act June 11, 1896, c. 420, 29 Stat. 434, Congress modified the original act and provided that a lien might be created by the state to which lands are granted, and when created should be valid on and against the separate legal subdivisions of land reclaimed for the actual cost and expenses of reclamation and interest thereon from the date of reclamation until disposed of to actual settlers, "and when an ample supply of water is actually furnished in a substantial ditch or canal * * * to reclaim a particular tract or tracts of such lands, then patent shall issue for the same to such state without regard to settlement or cultivation."

By legislation heretofore referred to, the state of Idaho, after accepting the provisions of the acts of Congress, provided (section 1615) that any one who desired to undertake the construction of irrigation works to reclaim land under the provisions of the Carey Act should file with the state board "a request for the selection, on behalf of the state, by the board, of the land to be reclaimed, designating said land by legal subdivisions." This request must be accompanied by proposal to construct works "necessary for the complete reclamation of the lands asked to be selected," and must be accompanied by a certificate of the state engineer "that application for permit to appropriate water has been filed." There shall also be given definite information as to the source of the water supply, location and character of the proposed works, estimated cost thereof, price per acre at which water rights are to be sold to settlers, name of the company, amount of capital, and other facts. The request and proposal must then be referred to the state engineer (section 1618), who must examine it and make a written report, stating whether or not the proposed works are feasible, and whether the work will be beneficial to the public interests, whether there is sufficient water unappropriated from the source of supply, whether he approves the permit, whether the capacity of the proposed works is adequate to reclaim the lands described, whether the cost of construction is reasonable, whether the lands are desert in character, and whether application is made under the provisions of the act of Congress and the rules and regulations of the Department of the Interior. If the state engineer should disapprove, the board could not approve; but if that official approved of the request and proposal, upon approval by the board that body should proceed to file in the local land office a request for the withdrawal of the lands described in the proposal (section 1619).

Upon withdrawal of the lands by the Department of the Interior, it becomes the duty of the board to make a contract with the parties who submitted the proposal (section 1621), the contract not to be entered into on the part of the state until the withdrawal of the lands

by the Interior Department and the filing of a satisfactory bond by the contractor. After withdrawal of the lands for the state by the Interior Department, and the inauguration of work by the contractor, the board is authorized to give notice that the land, or any part thereof, as the board may deem best, is open for settlement at a price under which settlers can purchase water rights or shares (section 1625). It is provided by section 1626 what the qualifications of applicants may be, and how they shall make application. By section 1628 the time within which proof may be made is provided for. In making final proof the settler shall furnish evidence of reclamation, settlement, and occupation, of the shares he may have in the works which entitle him to a water right for his entire tract "sufficient in volume for the complete irrigation and reclamation thereof," and that he has cultivated and irrigated not less than one-eighth part of the tract he is seeking to prove up on. After proofs in due form have been received by the board and final payment is made, the settler shall be entitled to his patent; but if the land shall not be embraced within any patent theretofore issued to the state by the United States, the proofs are to be forwarded to the Secretary of the Interior, with a request that a patent to the lands be issued to the state. It is also provided (section 1628) that when the works shall be so far completed as to "actually furnish an ample supply of water" to reclaim any particular tract, the state, through the board, shall make proof of such fact and apply for patent, as might be provided by the regulations of the Interior Department.

By section 1629, when patent is issued to any land by the United States to the state, the settler is to be notified, and the board is directed to issue a patent from the state to the settler. By section 3018, Comp. Stat. Idaho, water rights to lands acquired under the Carey Act shall attach to and become appurtenant to the land as soon as title passes from the United States to the state, and any company furnishing water for any tract shall have a first and prior lien on the water right and land upon which the water is used for all deferred payments for said water right. The lien shall remain effective until the last deferred payment for the water right is paid and satisfied according to the terms of the contract. Section 3019.

In accordance with the requirements of the statutes just referred to, the state board referred the application of the predecessors of the appellant to the state engineer, who upon the same day reported favorably under date of August 12, 1907, and thereafter, upon application to the United States for the segregation of the lands, order of segregation was granted and contract made for construction. The provisions of the contract call for completion, for the sale of shares of water rights to persons filing, for the transfer of ownership and control of the system to the settlers, and on the part of the state it was agreed that the lands would be thrown open for settlement, and that sale should be made to applicants at 50 cents per acre. In the contract the authorized capital stock of the corporation is fixed at 150,000 shares, intended to represent one share for each acre of land irrigated from the proposed canal. The works were completed, but,

instead of having a water supply capable of irrigating 150,000 acres, there is not more than enough to irrigate 35,000 acres; that is, the state board has so found. The proper authorities of the state, by formal order on January 2, 1920, accepted the works as completed with certain minor exceptions, subject, however, "to such obligation or obligations of said Twin Falls Salmon River Land & Water Company as may exist thereunder in said state contract or settlers' contracts, by reason of the alleged insufficiency of water supply."

With the foregoing statement of fact and citation of statutory authority, we are to consider the following case: The project, as shown by the complaint, was created to irrigate 150,000 acres, but thereafter by mutual agreement was constructed to irrigate approximately 60,-000 acres, for which quantity of land water rights were sold. Appellees assert that water is only available for about 35,000 acres, and therefore that the project should be contracted to such smaller area. Accordingly the state authorities intend to relinquish 25,000 acres to the United States. Plaintiff objects to such contemplated act, and takes the position heretofore stated.

[1] The particular injury which plaintiff alleges is that the officers of the state propose to relinquish certain lands which have been segregated; the purpose being to restore such lands to the authority of the United States. Inasmuch as the only interest which the appellant corporation has in such lands is the lien which it urges exists in its favor as security for the purchase price of rights to the use of water which it may furnish to users, we inquire whether or not there is such a lien at all in its favor. Reverting to the statute (heretofore cited) which creates a lien, we find that a lien shall be valid against the separate legal subdivisions of lands "reclaimed" for cost of expenses "of reclamation" and interest "from the date of reclamation" until disposed of to the actual settlers. No lien is created against lands which may be, but are not, reclaimed. Again, the statute expressly provides that, when "an ample supply of water is actually furnished" in a ditch or canal or reservoir "to reclaim a particular tract or tracts of such lands," then patents shall issue for the same to such state, without regard to settlement or cultivation. Without an ample supply of water, not to be estimated or furnished at some future time, but actually furnished, no patent can lawfully issue to the state. The legislation of the state is in harmony with this view. In section 1629, Idaho Code, it is provided that any company, "furnishing water for any tract of land, shall have a first and prior lien on said water right and land upon which said water is used," etc.

Again, by Act March 3, 1901, c. 853, 31 Stat. 1188, Congress provided that in the event of a failure by the state, within 10 years after segregation, to cause the lands segregated to be "irrigated and reclaimed," the Secretary of the Interior may, in his discretion, continue the segregation, not to exceed 5 years, "or restore the land to the public domain." This authority vested in the Secretary of the Interior to use his discretion either to continue the segregation, not to exceed 5 years, or to "restore" the land to the public domain, greatly helps to gather the true meaning of the congressional act, for it is

most improbable that it was intended that a power to restore land to the public domain, in the event of failure on the part of a construction company to cause lands to be irrigated and reclaimed, should be used if, by reason of the construction of the works, a lien was vested in the construction company. It would give rise to confusion to restore subject to the lien; while, if there could be no restoration, the statute would be meaningless.

In Adams v. Twin Falls Oakley Land & Water Co., 29 Idaho, 357, 161 Pac. 322, decided in 1916 by the Supreme Court of Idaho, the court analyzed the Carey Act in respect to the creation of a lien to insure to the construction company a return of the initial cost of construction and a reasonable profit on the investment, and after stating that there was a lien on the land itself, which attached when the necessary proof shall have been made by the entryman and patent issued to the state, and a conveyance passed by the state to the entryman, said:

"The existence of this lien depends primarily upon the completion of the construction works and the delivery of water through the works by the construction company as stipulated in its contracts with both the state and the entryman."

In the earlier case of Childs v. Neitzel, 26 Idaho, 116, 141 Pac. 77, decided in 1914, the same learned court regarded the lien to be created by the state upon such lands as are granted to the state under the Carey Act, and as provided for by the amendment approved June 11, 1896, as valid on and against the separate legal subdivisions of land reclaimed. The court said:

"That provision for a lien contemplates an ample supply of water shall have been actually furnished in a substantial ditch or canal, or by artesian wells or reservoirs, to reclaim such land in order to create a lien."

Again, in Idaho Irrigation Co., Ltd., v. Pew et al., 26 Idaho, 272, 141 Pac. 1099, the court, through Judge Ailshie, speaking in respect to the lien against a single purchaser of water right under the Carey Act, said:

"The essential thing that concerns the particular landowner and purchaser of a water right is whether or not the reservoir and main canal have been so far completed as to enable the company to regularly and permanently supply him with water for the irrigation of his land, and that the company has commenced and continues to do so."

The court also held that the statute implied that the issuance of patent for any one tract is not dependent on the completion of the whole reclamation system, but on the "actual furnishing of a permanent supply of water to that particular tract." That there must be an actual furnishing of an ample supply of water to reclaim is further evidenced by section 1628 of the Idaho Code, where it is provided that, when the works designated shall be so far completed as to actually furnish "an ample supply of water in a substantial ditch or canal to reclaim," etc., the state, through the board, shall make proof and apply for a patent. In McKinney v. Big Horn Basin Development Co., 167 Fed. 770, 93 C. C. A. 258, the Court of Appeals for the Eighth Circuit, in writing of the Carey Act, held that the

law did not make the grant to the state of the lands in mass to take effect in præsenti, and said:

"The state was first to furnish satisfactory evidence to the Secretary of the Interior that the lands are irrigated, reclaimed, and occupied by actual settlers before any patent therefor should issue."

Now, if it be a fact, and we must take it to be a fact from the pleadings herein, that there has not been an ample supply of water actually furnished for the reclamation of large tracts of the land embraced in the project, and there has been no actual reclamation, it follows that the appellant company has not been injured, and is not, therefore, in a position to maintain the suit against the officials of the state.

[2] But what authority is to decide whether or not the lands have been reclaimed? Clearly determination of the question is one of fact intrusted under the law to the General Land Office, and not to the courts. In Twin Falls Salmon River Land & Water Co. v. Caldwell, 242 Fed. 193, 155 C. C. A. 17, the point was involved, and we held that whether or not there was a supply of water such as is required by the statute is a pure question of fact, and one for the exclusive determination by the Land Department. To that opinion we now adhere; hence it must follow that if there has been a decision to the effect that there has been no reclamation, the courts will not interfere, and cannot hold that a lien exists. Gaines v. Thompson, 7 Wall. 347, 19 L. Ed. 62. In this connection it is evident that the officials of the Land Department of the United States are now proceeding upon the basis that the water supply is only sufficient to reclaim approximately 35,000 acres, which is very much less than those first interested contemplated. The situation was referred to by the Governor of the state in 1916 in a report to the board, as follows:

"By some miscalculation or through unavoidable circumstances there was a larger segregation of land made than it is possible to irrigate from the run-off waters of the Salmon river."

And the board made a finding that the water supply was inadequate to irrigate land in excess of 40,000 acres, as evidenced by the report of the Commissioner of the General Land Office, and that 2.26 acre feet is the highest possible duty of water that can be advantageously employed on the project.

[3] We are of the opinion that the officials of the state are not bound by principle of estoppel merely because, when the original application for segregation was made by plaintiff's predecessors, the state engineer (in 1907) reported to the state board that the supply of water was adequate and that the project was feasible. The application then made by plaintiff's assignors contained the statement that 150,000 acres could be irrigated under the projected scheme. Evidently they were in error in the very initial step they took. The board, for its information, referred the proposal to the state engineer; but the report of that official cannot be held to have been information upon which plaintiff entered into the contract. The state of Idaho made no representations to the original projectors in reliance upon which they were induced to enter upon a project pursuant to the Carey Act. The record shows that certain individuals made a written

proposal to the state land board, and set forth that they had been engaged in surveying and estimating upon the Salmon river project, and wished to build irrigation works to cover and irrigate and make the lands fit for agriculture. They asked the board to have the land segregated, and stated that, if their application were approved, they would have a corporation formed to undertake the work. In due course their proposal was accepted, and then they, or their assignee, this plaintiff, became bound.

We cannot see that, by action of the state land board and the Secretary of the Interior in approval of the original project, rights became vested in the appellant, and precluded inquiry into the ultimate fact of reclamation when application was made for patent, and, as incidental to the investigation, into the amount of water required to reclaim.

The District Court refrained from ruling upon the question of the power of the state board or of the Secretary of the Interior, over the objection of settlers upon excluded lands, to reduce the area of the project in the manner proposed, and until that question directly arises it should not be decided. But we do affirm the view that the right of lien of the appellant only reaches to the acreage for which it furnishes an ample quantity of water, and that under the showing made it is not entitled to equitable relief.

Affirmed.