(July 3, 1914.)

## IDAHO IRRIGATION COMPANY, LTD., a Corporation, Respondent, v. ADOLPH PEW and H. E. CORNELL, Appellants.

### [141 Pac. 1099.]

FORECLOSURE OF CAREY ACT LIEN—GROUNDS OF DEMURRER TO COM-
PLAINT—SEC. 1629, REV. CODES, AND FEDERAL CAREY ACT CON-
STRUED—CONTRACTS BETWEEN STATE AND IRRIGATION COMPANY AND
COMPANY AND SETTLER—WAIVER—ESTOPPEL.

1. In an action to foreclose a Carey Act lien under the provisions of sec. 1629, Rev. Codes, it is not necessary to allege in the complaint that the entire irrigation system has been completed, if it appears from the allegations of the complaint that an ample supply of water has been made permanently available for the tract of land upon which the lien is sought to be foreclosed, to the extent that the contract of the irrigation company to furnish such supply to the land in question has been fulfilled.

2. Sec. 1629, Rev. Codes, conferring a lien on land and water for water furnished to land, and the amendment to the federal Carey Act (29 U. S. Stats. at L., p. 435), authorizing the state to create a lien on the land, must be construed together, and the lien cannot attach until the provisions of both acts have been complied with.

3. The amendment to the federal Carey Act in fixing the amount of the lien upon the land to be created by the state at "the actual cost of reclamation and reasonable interest thereon from the date of reclamation until disposed of to actual settlers," contemplates the determination of such cost by the state, and that in a contract between the state and a corporation for the construction of irrigation works, such cost must be estimated or determined in advance as a basis for the contract between them.

4. In a contract between a Carey Act irrigation company and a settler, in which, by reference, the terms and conditions of the contract between the state and the irrigation company are assented to, and the price of water rights is fixed upon the basis of the estimated cost of the works contained in the state contract, both the company and the settler are estopped from afterward raising the question as to whether such estimated cost is the actual cost of the works.

5. In a suit to foreclose a Carey Act lien the cause of action arises under the state statute, and it is not necessary to allege in the complaint that a requirement of the federal statute, not contained in the state statute, has been complied with.

6. *Held,* that the complaint in this case is not demurrable on the ground of being ambiguous, unintelligible or uncertain.

APPEAL from the District Court of the Third Judicial District, in and for Ada County. Hon. Carl A. Davis, Judge.

Action to foreclose a Carey Act lien for default in payment by defendants of deferred payments upon a water right, purchased by defendant Pew under contract from the plaintiff corporation. Demurrer to complaint overruled, and from the order overruling the demurrer defendant Cornell appeals. *Affirmed.*

B. W. Oppenheim, for Appellants, cites no authorities.

N. M. Ruick, for Respondent.

The reclamation project need not be completed before the construction company is entitled to foreclose its lien on a particular tract. (*Childs v. Neitzel, ante,* p. 116, 141 Pac. 77.)

Under the provisions of sec. 1629, Rev. Codes, upon the default of any deferred payments, the lienholders may foreclose the same in accordance with the terms and conditions of the contract for the purchase of the water right. (*Idaho Irr. Co. v. Dill,* 25 Ida. 711, 139 Pac. 714.)

AILSHIE, C. J.—The complaint in this case is almost identical with the one in *Idaho Irr. Co. v. Dill,* recently decided by this court (25 Ida. 711, 139 Pac. 714), and the action is of the same nature. In that case the question presented was whether the lower court erred in sustaining a demurrer to the complaint upon the ground that the United States was a necessary party to the action, and upon that question this court reversed the court below.

By stipulation of counsel it was agreed that the contract which the plaintiff corporation made with the defendant in

this case was the same as in the Dill case, the only difference being in the date, name of purchaser, description of the land, etc., which minor differences were admitted to be immaterial, and the contracts introduced in evidence in the Dill case, including the contract and supplemental contract between the company and the state, were stipulated to be considered part of the record in this case.

The defendant Pew, the original purchaser, had assigned all his interest under the contract to the defendant Cornell, who alone appeared and demurred to the complaint. The lower court overruled the demurrer. Defendant elected to stand thereon and declined to plead further. The demurrer alleged that the complaint did not state facts sufficient to constitute a cause of action, and particularly in (1) that the plaintiff has not alleged that the irrigation system, which by the terms of the contracts set up in the complaint it agreed to construct, has been completed; (2) that the plaintiff has not alleged that the amounts sued upon and for which a lien is claimed are "the actual cost of reclamation (of the land described in the complaint) and reasonable interest thereon from the date of reclamation until disposed of to (an) actual settler(s)"; (3) "that no valid lien can be created under existing law against either land or water, as is attempted to be done under the allegations of the complaint herein."

1. We do not think it necessary for the plaintiff to allege that the entire reclamation system has been completed, in an action to foreclose a lien against a single purchaser of a water right under the Carey Act. The essential thing that concerns the particular land owner and purchaser of the water right is whether or not the reservoir and main canal have been so far completed as to enable the company to regularly and permanently supply him with water for the irrigation of his land, and that the company has commenced and continues to do so. The amendment to the Carey Act (29 U. S. Stats. at L., p. 435), after authorizing the state to create the lien against the land for the cost of reclamation, continues as follows: "And when an amply supply of water is actually furnished in a substantial ditch or canal, or by artesian wells or reser-

voirs, to reclaim a particular tract or tracts of such lands, then patents shall issue for the same to such state without regard to settlement or cultivation.'' This language explicitly refers to a ''particular tract,'' implying that the issuance of patent for any one tract is not dependent on the completion of the whole reclamation system, but on the actual furnishing of a permanent supply of water to that ''particular tract.'' The government then considers that the contract has been executed on the side of the state so far as that tract is concerned, and parts with its title accordingly, and it would certainly seem that the settler is assured of a permanent water supply when the ''particular tract'' has been so far reclaimed in the view of the government of the United States as to entitle the state and himself to a patent therefor. The fact that some other land owner and purchaser of a water right is not yet receiving water, or that the system has not been so far completed as to furnish another with water, does not justify one who has and is receiving a permanent and continuous supply of water for the irrigation of his land in refusing to pay for it. We find no provision in the Carey Act, nor in the laws of this state, nor in the contracts in evidence, which requires that the reclamation works shall be entirely completed before any of the deferred payments shall mature. If, as a matter of fact, a company that is seeking to foreclose such a lien has not made water permanently available to the land in question, and available in sufficient quantities and seasons to comply with the provisions of the contract, such defense will always be open to the settler.

A similar question arose on rehearing in the recent case of *Childs. v. Neitzel, ante,* p. 116, 141 Pac. 77, in which the contract with the settler also contemplated the payment for water rights by annual instalments, and the court said:

''We did not mean to hold in the original opinion that the annual instalments provided for by said water contracts did not become due and payable until the entire system was completed; but when the system was so far completed as to make water permanently available for any particular user for all

seasons, the instalments· agreed to be paid by the user would become due and payable in accordance with the terms of the contract. Then he has no reason to complain of lack of water for other land owners, because he has water available for the irrigation of his land.''

There are practical reasons which Congress doubtless had under consideration when by the 1896 amendment to the Carey Act it specified the character of completion necessary in order to obtain patent, with reference to ''a particular tract or tracts of such lands,'' instead of making it apply to all the lands embraced in the project. For instance, a Carey Act project may include several distinct segregations or units of land to be reclaimed, but all of which are covered by the one contract with the state. The entire completion of such a system may extend over a comparatively long period. An ample supply of water may be permanently furnished to one or more of these units for years before other portions of the system are finished. It would manifestly be a great financial burden upon the enterprise to exact from its promoters the condition that no deferred payments should be collected nor liens securing them attach until all lands on all the tracts embraced in the project were permanently supplied with water. Such a requirement, besides being unnecessary to protect a settler who was already in possession of what he had contracted for, would obviously increase the cost of the enterprise to the settler by making the investment less attractive to the capitalist, who would require a higher rate of interest, or its equivalent, to compensate him for the increased risk.

2. The next question raised by defendant's demurrer is that the complaint does not allege that the amounts sued for, and for which a lien is sought to be foreclosed, are the actual cost of reclamation of the land described in the complaint and reasonable interest thereon. The language of the 1896 amendment to the Carey Act on this point is as follows: ''A lien or liens is hereby authorized to be created by the state . . . . against the separate legal subdivisions of land reclaimed, for the actual cost and necessary expenses of reclama-

tion and reasonable interest thereon from the date of reclamation until disposed of to actual settlers.'' This ''actual cost of reclamation'' in any given case was evidently intended by the act to be determined by the state, and that determination would at least constitute *prima facie* proof that the amount the state allowed the company to charge and collect for a water right was the ''actual cost'' within the purview of the act of Congress. The Carey Act authorizes the state itself to reclaim the land or to contract with a corporation to do so. The presumption must be that the state will act fairly and justly, and that the price it permits to be charged and collected is clearly within the direction and authority of the congressional act.

This court has already held in *Idaho Irr. Co. v. Dill, supra*, that ''Under the provisions of section 1629, Rev. Codes, any company or association furnishing water for any tract of land is given a first and prior lien on the water right and the land upon which said water is used for all deferred payments for the water right, and upon default of any deferred payments the lienholder may foreclose the same in accordance with the terms and conditions of the contract for the purchase of the water right.''

Counsel for appellant contends in his brief that ''so far as the state lien is broader than the lien allowed by the national law it is invalid,. for by sec. 1613 Rev. Codes, our legislature accepts the conditions of the Carey Act. The national law is paramount. The state is not authorized to create any lien against either land or water except for 'the actual and necessary expenses of reclamation and reasonable interest thereon.' '' This contention may be conceded in the main, but subject to an important qualification. The national Carey Act authorizes a lien only against the land. It apparently recognizes the right of the state to control the disposition of its public waters. The state statute authorizes a lien against both the land and water, as it has a right to do, and to this extent is broader in its lien conferring provisions. But so far as the land itself is concerned, the lien of course must be subject to the limitations of the congressional act.

Before the state and the constructing company can enter into any contract for the reclamation of a tract of land, they must have agreed upon the estimated cost of construction and the corresponding price to be charged for water rights, in order to defray such cost. That agreement as to cost is the basis of the contract between the company and the state. Again, when the company first comes into relation with the settler, it must have contractual assurance from him that he will reimburse it for his share of this estimated cost, and the settler on the other hand must be safeguarded by a fixed contract price for the water right if he enters upon the land. This arrangement impresses us as not only unavoidable in the very nature of the conditions existing, but as eminently fair and just to all parties. If the prospective settler considers the estimated cost of construction excessive he need not contract for the purchase of water rights under that project. He is under no compulsion to contract with the company at all. He is not dependent on the company when he makes his contract with it, for the law does not permit him to enter the land before he makes the water right contract. If he does enter into a contract for the purchase of water rights to be paid for in instalments, subject to foreclosure if the deferred payments are not made, it must be assumed that he does so with his eyes open, with the knowledge that the contract is one specifically authorized by statute, and at the same time receiving the assurance that he is protected by the provisions of the national Carey Act amendment, the effect of which is, that the lien cannot attach until the company has fully executed its part of the contract. (*Childs v. Neitzel, supra.*)

After the recitals of the settlers' contract with the company the first article of the agreement begins as follows: "This agreement is made in accordance with the provisions of said contract between the state of Idaho and the company, which, together with the laws of the state of Idaho, under which this agreement is made, shall be regarded as defining the rights of the respective parties."

In making that contract the settler assents to the estimate authorized by the state as to the cost of reclamation. Can

he then be deemed to reserve any right to have another or later estimate made of the cost of constructing the works? We think not. He has contracted to make these payments with full knowledge of all these facts and circumstances, and in an action to foreclose the lien is estopped and precluded from questioning or denying that the price fixed by the contract represents the actual cost of reclamation and reasonable interest thereon, as contemplated by the Carey Act.

Suppose, on the other hand, that the estimated cost is largely exceeded by the actual cost of construction, as is said to often be the case. Could it for a moment be maintained that the construction company would be entitled, under authority of the national act, to a lien sufficient to cover that increased "actual cost," in the face of the contract which it had made?

In concluding our consideration of this part of the case, it may be pointed out that the amendment of 1896 to the federal Carey Act does not create the lien. It in effect ratifies the previous creation of the lien by the state statute (Act of 1895, Sess. Laws 1895, p. 227; sec. 1629, Rev. Codes), but contains a condition not contained in the provisions of our statute. However, since the cause of action arises under our statute we do not think it strictly necessary for the complaint to allege that the requirement of the federal statute has been complied with, that is to say, that the amount of the lien claimed represents "the actual cost and necessary expenses of reclamation," etc. But it occurs to us that it would certainly be good practice to insert such an allegation in any complaint for the foreclosure of a Carey Act lien.

3. In the light of the foregoing considerations there can be no doubt, after construing together the federal and state statutory provisions on the subject, that the purchaser of a water right under a Carey Act project may so contract as to eventually result in a lien being created upon all the property rights which he acquires.

4. Defendant demurred specially to paragraph 8 of the complaint, on the ground "that the same is ambiguous, unintelligible and uncertain, in this, that plaintiff alleges 'that

plaintiff has performed all the conditions of the said contract required to be performed to entitle it to the relief sought in this action,' and that from said allegation it cannot be determined what conditions, if any, have been performed by plaintiff, sufficient to enable this defendant to answer said complaint.'' It appears by an examination of the complaint that this general allegation is preceded by specific allegations which recite certain acts of plaintiff company purported to have been done in compliance with the conditions specified in the contract. The complaint is not demurrable on this ground.

The judgment of the lower court is *affirmed.* Costs awarded in favor of respondent.

Sullivan, J., concurs.