(March 24, 1921.)

## JOHNSON CRAIG et al., Respondents, v. J. W. SMITH, Appellant.

[196 Pac. 1038.]

CAREY ACT—SUBCONTRACTOR'S LIEN.

> *Held,* in this case, that the Canyon Canal Company, Ltd., had no right, title or interest in the main canal and right of way to which the lien of appellant attached.

APPEAL from the District Court of the Seventh Judicial District of the State of Idaho, for Gem County. Hon. I. F. Smith, Judge.

Action to quiet title. Judgment for plaintiffs. *Affirmed.*

S. L. Tipton and Alfred A. Fraser, for Appellant.

It is a condition precedent to the existence of a water right under sec. 5639, C. S., that payment therefor shall have been made. (*Bennett v. Twin Falls etc. Water Co.,* 27 Ida. 643, 150 Pac. 336.) That section does not apply to nor include a mechanic's lien on the property and the defendant claims title to the canal under a foreclosure of his mechanic's lien.

The defendant has a lien upon the water right and ditch for the unpaid balance due on the purchase price of water right at the time the defendant's lien attached to said canal. (*Smith v. Faris-Kesl Const. Co.,* 27 Ida. 407, 432, 150 Pac. 25.)

Before plaintiffs can invoke the equitable powers of this court they must do equity. The defendant owns the Canyon canal, having purchased under foreclosure of his mechanic's lien against the canal company; the plaintiffs cannot use the same without paying for its use.

Water rights and canal are separate and distinct rights. (*Ada County Farmers' Irrigating Co. v. Farmers' Canal Co.,* 5 Ida. 793, 51 Pac. 990, 40 L. R. A. 485; *Parke v.*

*Boulware,* 7 Ida. 490, 63 Pac. 1045; *Swank v. Sweetwater Irr. etc. Co.,* 15 Ida. 353, 98 Pac. 297; *Stocker v. Kirtley,* 6 Ida. 795, 59 Pac. 891.)

Richards & Haga and J. M. Thompson, for Respondents.

The lien of a subcontractor on an irrigation system constructed under the Carey Act must in any event be limited to the interest or right of the construction company under the state contract and the Carey Act laws of the state and federal government. (*Nelson-Bennett Co. v. Twin Falls Land & W. Co.,* 14 Ida. 5, 93 Pac. 789; *Smith v. Faris-Kesl Construction Co., Ltd.,* 27 Ida. 407, 150 Pac. 25; *Childs v. Neitzel,* 26 Ida. 116, 141 Pac. 77.)

A Carey Act construction company acquires, builds or constructs nothing for itself, nor is it the owner of either the land, water or irrigation system, but is formed solely to construct the works, and holds the title in trust for the prospective entrymen under the proposed project and acts as a conduit for transferring the title to the water from the state to the entrymen. A lien claimant, or one purchasing under a lien foreclosure, could at most simply step into the shoes of the construction company and carry out the state contract, being subrogated to the construction company's rights thereunder. (*Bennett v. Twin Falls etc. Water Co.,* 27 Ida. 643, 150 Pac. 336; *Idaho Irr. Co. v. Lincoln County,* 28 Ida. 98, 152 Pac. 1058; *State v. Twin Falls S. R. Land & Water Co.,* 30 Ida. 41, 166 Pac. 220; *Nelson-Bennett Co. v. Twin Falls L. & Water Co., supra; Smith v. Faris-Kesl Const. Co., Ltd., supra; State v. Twin Falls Canal Co.,* 21 Ida. 410, 121 Pac. 1039, L. R. A. 1916F, 236; *State v. Twin Falls Canal Co.,* 27 Ida. 728, 151 Pac. 1013.)

A lien claimant, or one purchasing under the foreclosure of a lien, against a Carey Act project, can have no lien or claim on the unpaid balance due on the purchase price of or moneys to be derived from the sale of water rights. (*Pacific Coast Pipe Co. v. Blaine County Irr. Co.,* 32 Ida. 705, 187 Pac. 940.)

A lien claimant contracting with a *quasi*-public service corporation will be held to have dealt with such company subject to its duties to the public and to its obligations as such, and a lien claimant will not be permitted to interfere with the carrying out of contracts necessarily entered into in performance of its public duties or the performance of its obligations. (*Sammons v. Kearney Power & Irr. Co.,* 77 Neb. 580, 110 N. W. 308, 8 L. R. A., N. S., 404; *Hewitt v. Great Western Beet Sugar Co.,* 20 Ida. 235, 118 Pac. 296.)

Under sec. 4, art. 5, of the constitution, and sec. 5639, C. S., when payment is made on a water right, the water right shall remain a part of the tract of land for which the same is purchased or made appurtenant, and the title to the use of said water cannot be affected in any way by any subsequent transfer of the canal or ditch property or by any subsequent foreclosure of any bond, mortgage or other lien. (*Hewitt v. Great Western Beet Sugar Co., supra.*)

DUNN, J.—This is an action brought by the plaintiff on behalf of himself and a large number of other persons similarly situated to quiet title to their respective water rights in the irrigation system now being maintained and operated by the Emmett Irrigation District.

No answer was filed by the defendant, but the plaintiff and defendant entered into a stipulation of facts, of which the material ones will be stated in the opinion. Judgment as prayed for was entered by the trial court and defendant has appealed.

In December, 1903, the Canyon Canal Co., Ltd., hereinafter called the canal company, entered into a contract with the state of Idaho through its state board of land commissioners for the construction of irrigation works for the reclamation of certain lands in Canyon and Boise counties. The canal company let a contract for a portion of the construction work to the Faris-Kesl Construction Co., a corporation, and the latter company sublet a portion

of the main canal to one J. W. Smith, the defendant in this action. On completion of his subcontract, in order to secure a balance that was due him, Smith filed a notice claiming a lien as subcontractor on the main ditch and canal known as the Canyon canal situated in Boise and Canyon counties, state of Idaho, and described as a strip of land 100 feet in width and about 31½ miles in length, commencing at a certain designated point in Boise county and running thence in a southwesterly direction to a certain designated point in Canyon county, upon which strip of land that certain main ditch or canal was constructed known as the Canyon canal. Notice of said lien was filed on Sept. 25, 1906, and on Nov. 2, 1906, foreclosure suit was begun. This foreclosure suit finally went to judgment Apr. 21, 1913, when the court decreed Smith to be entitled to recover from the said Faris-Kesl Construction Co. the sum of $18,051.51, and to a lien for said sum on all of the interest that the canal company and the Emmett Irrigation District as its successor had in the above-described strip of land and the ditch thereon at the time of the commencement of work thereon by the said Smith. The court further decreed that all the right, title and interest of the said canal company and the said Emmett Irrigation District as its successor in and to said canal and premises above described be sold to satisfy the amount of said lien.

An appeal was taken, and in affirming the judgment of the district court this court said that said "lien extends only to such right, title, and interest as the Canyon Canal Company, Ltd., had in the property at the time the lien of the respondent attached to it, subject to the lien, if any, now existing and to the extent that the same does exist, of that said mortgage made and executed by the said Canyon Canal Company to the American Trust and Savings Bank as trustee for the purpose of securing the payment of bonds of said canal company in the sum of $350,000." (*Smith v. Faris-Kesl Constr. Co.*, 27 Ida. 407, 432, 150 Pac. 25, 33.)

Thereafter sale of said canal company's interest was made pursuant to said decree and at said sale said interest was purchased by J. W. Smith, the lien claimant and defendant in this action. By virtue of such purchase the defendant in this action claims to be the owner of said irrigation system.

It is admitted by the defendant that the said canal company at the time stated entered into a contract with the state of Idaho for the construction of the said canal under what is known as the Carey Act and the laws of this state enacted for the government of reclamation projects carried on under said Carey Act; and that after said canal company entered upon the construction of said irrigation system the lands theretofore segregated from the public domain to be reclaimed under said project were declared open to settlement by notice published as provided by law and that thereupon on or about the third day of July, 1905, one Katherine Maynard entered into a contract with the said canal company for the purchase of a perpetual water right, of a form approved by the state board of land commissioners and used by the said canal company in the sale of water rights, shares, and interests in its irrigation system, for the purpose of reclaiming 160 acres of land described as the NW. ¼ of sec. 33, Tp. 7 North, Range 2 West, B. M., and that the consideration for the purchase of said water right of 160 shares stated in said contract and agreed upon between the said Katherine Maynard and the said canal company was $30 per share or water right, or a total of $4,800, to be paid in ten equal installments with interest as set forth in said contract; that the said Katherine Maynard on or about the third day of July, 1905, and immediately after making the said contract, entered the said tract of land above described and thereafter, and in full compliance with the provisions of the statutes of the state of Idaho relating to such matters, the said Katherine Maynard made proof of reclamation, residence and settlement on said land so as to entitle her to a patent or deed from the state of Idaho under the said acts of Congress

and the laws of the state of Idaho; that the said contract between the said Katherine Maynard and the said canal company was duly acknowledged and the same was on or about July 3, 1905, duly recorded in the office of the county recorder of the county in which said land is situated, and under said contract the said Katherine Maynard was entitled to receive a water right, share and interest in said irrigation system of the kind and character contemplated by the acts of Congress and the laws of the state of Idaho.

On or about the nineteenth day of April, 1906, the said Katherine Maynard for a valuable consideration sold, transferred and conveyed the said land and water rights to the plaintiff herein and the said plaintiff ever since said nineteenth day of April, 1906, has been and still is the owner and in possession, use and enjoyment of the said lands and water rights and the plaintiff's said grantor was the owner in possession and use and enjoyment of said lands and water rights from the time of the purchase thereof, to wit, the said third day of July, 1905, until the said nineteenth day of April, 1906, when the same were sold and conveyed to this plaintiff; that the deed conveying said lands and water rights to this plaintiff was duly acknowledged and the same was on the —— day of April, 1906, duly recorded in the office of the county recorder of the county in which the lands and premises were then situated, to wit, Canyon county.

Similar allegations as to purchase of water rights under contract with said canal company and entry of lands under said reclamation enterprise by a large number of persons are made in the complaint and admitted by defendant, and that said persons purchased water rights, shares and interest in said irrigation system under contracts similar in all respects to the contract entered into with the said Katherine Maynard, paying therefor substantially the same consideration as was paid by her. The aggregate number of acres of land so entered by said persons and the aggregate number of water rights, shares or interests purchased by said

persons as alleged in said complaint is approximately 25,000. It is also admitted by the defendant that on or about the fifteenth day of June, 1905, the said canal company made, executed and delivered to the American Trust and Savings Bank of Chicago, Ill., as trustee, its said first mortgage or deed of trust conveying to said trustee all the property, real, personal and mixed, rights and franchises, of the said canal company then owned or that might thereafter be acquired as security for the payment of its coupon bonds of the aggregate or par value of $350,000, issued and sold for the purpose of obtaining funds with which to construct said canal and irrigation system, and which bonds were known as the first mortgage bonds of said canal company; and as additional and collateral security for the payment of such bonds the said canal company assigned and pledged to and deposited with the said trustee under said mortgage or deed of trust all water contracts so entered into with purchasers of water rights, shares or interests in said irrigation system, and the moneys due and to become due thereunder, and the lien created thereby on the water rights, lands and premises therein described and all water contracts that had not been entered into at the time of the execution and delivery of such first mortgage or deed of trust, were, nevertheless, assigned to and pledged and deposited with said trustee from time to time as the same were entered into or received by said canal company.

Said sum of $350,000 received from the sale of said first mortgage bonds was not sufficient to meet the cost of construction of said irrigation system and said canal company in the month of July, 1906, borrowed the further sum of $100,000, issuing its notes therefor, and in the month of December, 1908, the further sum of $100,000 and on or about the first day of July, 1910, the further sum of $200,000, and as security for the payment of said sums so borrowed the said canal company hypothecated and assigned its equity in all water contracts hereinbefore mentioned and deposited with the said trustee, and the sums so borrowed were expended in the construction of said

irrigation system, except necessary charges, discounts and expenses paid in connection with said loans.

The canal company failed to complete said irrigation system in accordance with its said contract, and in the month of June, 1910, became wholly insolvent and unable to further maintain or operate said irrigation system, or do any further work toward the construction or completion thereof and wholly abandoned said irrigation system and its said contract; and thereupon this plaintiff and other land owners and purchasers of water rights in said irrigation system, similarly situated with this plaintiff, were compelled in order to protect their interests in said irrigation system and obtain water therefrom for the irrigation of their growing crops to take possession of and to advance funds for the maintenance, repair and operation of said irrigation system during the irrigation season of 1910; and said canal system was incapable at the time that it was so abandoned of diverting and carrying to the place of intended use more than 160 cubic feet of water per second and was greatly in need of enlargement, repairs and improvements.

On or about the fifteenth day of August, 1911, the said canal company, being wholly insolvent as aforesaid and unable to complete said irrigation system or carry out its said contract with the state of Idaho, or further maintain or operate said irrigation system, conveyed, transferred and assigned all its right, title and interest, water rights and water appropriations to the Emmett Irrigation District, a municipal corporation organized on or about the thirteenth day of September, 1910, under the laws of the state of Idaho for the purpose of taking over, maintaining and operating said irrigation system and distributing water therefrom to the owners of land within the boundaries of said district; that said Emmett Irrigation District has not now and never has had any right, title or interest in said irrigation system, water rights or appropriations except such right, title, equity or interest as remained in said canal company after the sale of said water rights, shares and

interests to settlers and owners of land under said irrigation system, as hereinbefore alleged, under forms of contract similar to that entered into by the said Katherine Maynard.

On or about the first day of January, 1911, the said Emmett Irrigation District issued $1,100,000 par value of its coupon bonds, of which approximately $900,000 par value were used in securing the release of the said mortgage and deed of trust of said canal company for the payment of which said water contracts had been so pledged and deposited with the said American Trust and Savings Bank as trustee; and the proceeds from the sale of a portion of said bonds were used in the enlargement, betterment and improvement of said canal and irrigation system, all of which was necessary because of the failure of said canal company to comply with the terms of its said contract with the state of Idaho and because said canal and irrigation system was wholly insufficient in capacity and in character of construction to furnish water for the irrigation and reclamation of the lands described in the contracts for the sale of water rights entered into as hereinbefore alleged in accordance with the terms and provisions of said contracts and to the amount and in the manner therein provided; that upon the payment by said irrigation district of the mortgage indebtedness of said canal company the said canal company and the said trustee transferred to said Emmett Irrigation District the said water contracts so entered into and deposited with the American Trust and Savings Bank as aforesaid, and thereupon said Emmett Irrigation District released and satisfied of record the lien created by said water contracts against the several tracts of land and appurtenant water rights described in said water contracts, and in lieu thereof said Emmett Irrigation District apportioned its said bond issue of $1,100,000 against the several tracts of land situated within the boundaries of said district in accordance with the provisions of sec. 2399 of the Rev. Codes of Idaho as amended; that said district includes all the lands for which water rights had

been sold by said canal company in said irrigation system, and not to exceed 600 acres in addition thereto; that the apportionment of benefits against the lands of the plaintiff by said Emmett Irrigation District is greatly in excess of the amount due said canal company under the said water contract covering plaintiff's lands, all of which was necessary because said irrigation system was incomplete and insufficient and was abandoned as aforesaid by said canal company before the same was completed.

The consideration for the water rights, shares and interests in said irrigation system sold by the canal company to plaintiffs and other purchasers of water rights was paid part in cash at the time of the purchase and the balance was made payable in deferred payments extending over a series of years, and the aggregate of the deferred payments unmatured and unpaid on Sept. 12, 1905, Sept. 25, 1906, and Nov. 2, 1906, of all contracts in force and effect on said respective dates was in excess of the amount due the defendant on said dates from the said Faris-Kesl Construction Co., Ltd.

Under the contract the canal company was bound to construct a main canal capable of carrying the minimum amount of 310 cubic feet of water per second of time, and at the time of ceasing work upon said canal and abandoning its contract for the construction thereof said canal had a carrying capacity of not more than 160 cubic feet of water per second of time, and at that time the canal company had sold water rights far in excess of the carrying capacity of said canal as it then existed.

It is admitted that between the date of the commencement of said foreclosure action, to wit, Nov. 2, 1906, and the entry of judgment therein on the twenty-first day of Apr., 1913, the plaintiff and other water users under said irrigation system were compelled to expend large sums of money in the enlargement, betterment and improvement of said canal to the end that they might receive water therefrom for the preservation of their crops and the permanent irrigation and reclamation of their lands; that the sums so

expended aggregated several hundred thousands of dollars, the exact amount thereof being to the plaintiff unknown, and by such expenditures and improvements said irrigation system has greatly increased in value, and if the defendant's claim be sustained and his lien and judgment enforced against the water rights, shares and interests so purchased by plaintiff and other water users as aforesaid, the said defendant will profit to the extent of the amounts which this plaintiff and other water users were compelled to expend in the enlargement and permanent improvement and betterment of said irrigation system, while the said defendant was delaying the prosecution of his action for the foreclosure of his- said lien, and without such expenditures plaintiff and said water users could not have received water from said system except possibly in quantities and at times so insufficient and uncertain as to render the use thereof impracticable for the raising of crops or for the permanent development and improvement of the lands so owned by plaintiff and other water users.

Under the· act of June 11, 1896, 29 Stat. L. 434, it is provided that: "A· lien or liens is hereby authorized to be created by the state to which such lands are granted and by no other authority whatever, and when created shall be valid on and against the separate legal subdivisions of land reclaimed, for the actual cost and necessary expenses of reclamation and reasonable interest thereon from the date of reclamation until disposed of to actual settlers; and when an ample supply of water is actually furnished in a substantial ditch or canal, or by artesian wells or reservoirs, to reclaim`a particular tract or tracts of such lands, then patents shall issue for the same to such state without regard to settlement or cultivation."

C. S., sec. 3019, which was a part of R. C., sec. 1629, provides: "Any person, company or association, furnishing water for any tract of land, shall have a first and prior lien on said water right and land upon which said water is used, for all deferred payments for said water right; said lien to be in all respects prior to any and all other liens

created or attempted to be created by the owner and possessor of said land; said lien to remain in full force and effect until the last deferred payment for the water right is fully paid and satisfied according to the terms of the contract under which said water right was acquired.''

C. S., sec. 7339, provides: ''Every person performing labor upon or furnishing materials to be used in the construction, alteration or repair - of any . . . . ditch, dike, flume . . . . has a lien upon the same for the work or labor done or materials furnished.''

We think the decisions of this court settle beyond controversy the question whether the appellant in this action is the owner of the main ditch through which waters are supplied to the lands of the respondent herein and other land owners in the Emmett Irrigation District.

In the case of *Childs v. Neitzel,* 26 Ida. 116, 141 Pac. 77, which was an action to foreclose a mortgage on an irrigation system, the court said: ''Construction companies of this kind will not be permitted to do indirectly what they are prohibited from doing directly. They will not be permitted to make contracts with third parties in regard to the construction or completion of an irrigation system whereby the land owners or purchasers of water rights can be deprived of the rights . acquired under their water right contracts. For instance, if a company, such as the Murphy company, fails to complete its system and furnish the water as provided in the water right contracts, or if such company should sublet the construction of its system and fail and neglect to pay such subcontractor, the subcontractor could not acquire greater rights as against the water right purchasers than the irrigation company itself had under its contract with the purchasers of water rights, and could not deprive the purchasers of water rights under such a system of their rights or acquire a right by foreclosure of a lien or mortgage for such construction work as would deprive the water right purchasers of their rights under their contracts.''

Quoting the above statement this court in the case of *Smith v. Faris-Kesl Constr. Co., Ltd.,* 27 Ida. 407, 433, 150 Pac. 25, 33, said: "There appears to be no discord between that opinion and that in case of *Nelson-Bennett Co. v. Twin Falls Land & Water Co.,* 14 Ida. 5, 93 Pac. 789, upon the point under consideration, and it is not the intention to express anything herein from which it may be inferred that a purchaser at a sale of property to satisfy a mechanic's lien can acquire any greater right, title or interest in or to the property than the owner had at whose instance the improvement was made."

"Counsel for appellant contends in his brief that so far as the state lien is broader than the lien allowed by the national law it is invalid, for by section 1613, Rev. Codes, our legislature accepts the conditions of the Carey Act. The national law is paramount. The state is not authorized to create any lien against either land or water except for the 'actual cost and necessary expenses of reclamation and reasonable interest thereon.' This contention may be conceded in the main, but subject to qualification. The national Carey Act authorizes a lien only against the land. It apparently recognizes the right of the state to control the disposition of its public waters. The state statute authorizes a lien against both the land and water, as it has a right to do, and to this extent is broader in its lien conferring provisions. But so far as the land itself is concerned, the lien of course must be subject to the limitations of the congressional act." (*Idaho Irr. Co., Ltd., v. Pew,* 26 Ida. 272, 277, 141 Pac. 1099, 1101.)

The contract price of the water right fixes the "actual cost and necessary expenses of reclamation," and no lien for the original cost of construction of the reclamation system could be enforced either by the canal company or a subcontractor for a greater amount than such contract price, which in this case was $30 per acre. (*Idaho Irr. Co., Ltd., v. Pew, supra.*)

"The water contracts in the case at bar make the deferred payments a lien upon the water rights and land,

but such liens do not attach until the water has been made permanently available for the reclamation of the land." (*Childs v. Neitzel, supra.*)

Under the admitted facts in this case we know of no right, title or interest of said canal company in said canal or right of way remaining after its abandonment of its contract to which appellant's lien could attach, certainly none by which he could take the canal away from the settlers. If it should be conceded that the sale of the canal system upon the foreclosure of the lien to appellant effected an equitable assignment of the moneys unpaid upon the settler's contracts, such assignment would be subject to all equities existing in favor of the settlers and the Emmett Irrigation District. All the settlers' contracts had been assigned by the canal company to the American Trust Company. They were subsequently assigned by the American Trust Company and the canal company to the Emmett Irrigation District. Upon substitution by the district of its bonds for the mortgage held by the trust company, the mortgage of the trust company was paid not by the canal company, but by the settlers acting through the Emmett Irrigation District. Whether or not the amounts due upon the contracts exceeded the amount of the trust company's mortgage does not appear from the stipulation of facts. It does appear, however, that on account of the default of the canal company the settlers, individually and through the Emmett Irrigation District, in order to complete the work called for by the company's contract, were obliged to expend sums which, added to the amount of the mortgage of the trust company, were far in excess of the amount called for by the settlers' contracts. The settlers were therefore entitled to offset any amount so expended in completing the company's contract against the amounts yet due upon the contracts. Hence appellant is in no position to reach any portion of the amounts of money due upon such contracts at the time he filed or foreclosed his lien.

The appellant's lien as set forth by him in his notice was claimed upon the main canal and the right of way 100

feet wide, and the court decreed him a lien on the right, title and interest of the Canyon Canal Co. in said canal and right of way, and the decision of this court expressly limited his lien to said canal company's interest therein. Neither in the notice of lien, nor in the complaint, nor in the decree of foreclosure is there mention of a claim of lien on the water rights. There could be no legal sale under the decree of foreclosure of anything except the right, title and interest of the canal company in said canal and right of way. How, then, can it be now successfully claimed that the appellant has acquired any interest in the water rights? Surely he must stand upon the claim of lien as he has asserted it and as the court has confirmed it. He can have nothing now that was not included in the decree, for he has purchased nothing beyond that.

The appellant made and performed his contract on the canal system with full knowledge of the terms of the contracts of the canal company with the state and with the settlers and of the laws of the United States and of the state of Idaho governing Carey Act projects. He must be held to have known that his right to enforce his claim for compensation for his labor depended upon the canal company's interest in the canal system, and that such interest must be acquired by the canal company's complying with its contract.

We are not called upon to speculate in this case as to whether any different steps could have been taken by appellant in asserting his claim of lien that would have placed him in a better position than he is now in, nor as to what he could or should have done if the canal company had complied with its contract in every particular and had supplied the land owners with water. We are dealing with the rights of the settlers and the appellant under the facts as they exist in this case. Under these facts it is clear that the appellant by his purchase of the interest of the canal company in said canal and right of way has not acquired any right whatever to the waters dedicated to the lands under said ditch, nor any right or

title to said ditch or right of way, nor any right to prevent the respondent or any other land owner similarly situated from using said canal with the right of way for the purpose for which said canal was built.

The judgment is affirmed, with costs to respondent.

Rice, C. J., and McCarthy and Lee, JJ., concur.

Budge, J., heard the argument but took no part in the opinion.